UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GREGORY THOMAS,

                             Petitioner,

                                                9:18-cv-00430
v.                                                 (MAD/TWD)

WARDEN FCI RAY BROOK,

                           Respondent.
_____

APPEARANCES:                             OF COUNSEL:

Gregory Thomas
13366-052
Petitioner, *pro se*
Ray Brook
Federal Correctional Institution
PO Box 900
Ray Brook, NY 12977

ANTOINETTE T. BACON                    EMER M. STACK, ESQ.
Acting United States Attorney            Assistant United States Attorney
Northern District of New York
Attorney for Respondent
100 S. Clinton St.
Syracuse, NY 13261

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

## I.    INTRODUCTION

      This matter has been referred for a Report-Recommendation by the Honorable Mae A.

D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local

Rule 72.3(c).  Petitioner Gregory Thomas, an inmate at the Federal Correctional Institution

("FCI") in Ray Brook, New York, brings this *pro se* petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2241.  (Dkt. No. 1.)  Petitioner does not challenge his conviction, but rather

alleges that the Federal Bureau of Prisons ("BOP") improperly denied him credit toward his

federal sentence for time spent in state custody.  Respondent Warden FCI Ray Brook has filed a

response, together with the Declaration of Alan Ray, a Correctional Program Specialist

employed by the BOP at the Designation and Sentence Computation Center in Grand Prairie,

Texas.  (Dkt. No. 5.)  Petitioner filed a reply.  (Dkt. No. 8.)  For the reasons discussed below, the

Court recommends denying and dismissing the petition.

## II.    BACKGROUND

On April 14, 2005, Petitioner was arrested by the Syracuse Police Department and

charged with resisting arrest, loitering, and criminal possession of a controlled substance in the

third and seventh degree in Onondaga County Court in case number I-2005-1205-1.  (Dkt. No. 5-

1 at ¶ 5; *see also* Dkt. No. 5-2 at 2-3.[1])  On April 19, 2005, a parole violator warrant (#436748)

was lodged by the State of New York in Onondaga County Court in case number I-2001-0184-1.

(Dkt. No. 5-1 at ¶ 6.)

On July 20, 2005, while in state custody, Petitioner was indicted on federal charges in

this Court in case number 5:05-CR-0322-13 (NAM).  (Dkt. No. 5-2 at 3.)  Petitioner was

temporarily transferred to federal custody after the issuance of a writ of habeas corpus ad

prosequendum on August 2, 2005.  (Dkt. No. 5-1 at ¶ 7.)  Although it appears the state charges

filed in case number I-2005-1205-1 were dismissed on March 9, 2006, Petitioner remained in

state custody related to the state parole violation in case number I-2001-0184-1.  (*See* Dkt. No. 1-

1 at 36; Dkt. No. 5-10 at 8.)

---

[1]  Page citations refer to the pagination CM/ECF automatically generates.  Excerpts from the
record are reproduced exactly as they appear in the original and errors in spelling, punctuation,
and grammar have not been corrected unless indicated.

On May 23, 2007, following a jury trial, the Honorable Norman A. Mordue, Senior United States District Judge, sentenced Petitioner in case number 5:05-CR-0322-13 (NAM) to a term of imprisonment of 360 months for conspiracy to engage in a pattern of racketeering activity. (Dkt. No. 5-1 at ¶ 8.[2])

On June 14, 2007, after sentencing, Petitioner was returned to state custody. (Dkt. No. 5-1 at ¶ 9.) It thus appears Petitioner remained in temporary federal confinement through his federal trial and sentencing.

On July 31, 2007, Petitioner's state parole was revoked, and he was re-paroled and taken into federal custody. *Id.* at ¶ 10. The BOP calculated Petitioner's federal sentence beginning on July 31, 2007, the same date he was released on parole from the State of New York. *Id.* at ¶ 15. He received five days of jail credit from April 14, 2005, through April 18, 2005. *Id.*

On October 10, 2014, Petitioner filed an administrative grievance with the BOP seeking federal credit for time served in state custody from August 2, 2005, through May 23, 2007. (Dkt. No. 5-15 at 10.) On November 12, 2014, the BOP denied Petitioner's request:

> Originally, you were re-paroled from your New York Sentence on May 20, 2004. On April 19, 2005 you were remanded back to New York State custody for violating your Parole. According to your Presentence Investigation Report, you remained in "Primary" state custody related to the state parole violation. Additionally, your Jail Credit memorandum dated August 28, 2007 states in part "04-19-2005 Parole Warrant issued, and inmate held on New York State Parole warrant. On 07-31-2007 parole revoked, and re-paroled same day. Total credit given to parole revocation 843 days from 04-19-2005 to 07-31-2007. Information verified with New York State Parole."

---

[2]  On September 13, 2011, Petitioner's sentence was reduced from 360 months to 292 months. (Dkt. No. 5-1 at ¶ 11.) A review of the docket reveals that on March 30, 2018, Petitioner's sentence was reduced from 292 months to 235 months. *See United States v. Thomas*, No. 5:05-CR-0322-13 (NAM), Dkt. No. 1107.

On August 2, 2005, while you were in service of your New York State parole sentence, you were produced on a Federal Writ to answer charges for your instant federal offense.  On May 23, 2007, while on Federal Writ from New York State, you were sentenced to three hundred sixty (360) months for Conspiracy to Engage in a Pattern of Racketeering Activity.  Subsequently, on September 13, 2011, your sentence was amended to a term of two hundred ninety-two (292) months.  Jail credit awarded to your federal sentence was from April 14, 2005 to April 18, 2005. . . .

With regard to the period you spent in Federal custody, documentation provided by New York State Division of Parole reflected the period of credit you are seeking has already been credited to the service of the state sentence.  To double-credit this period to your federal sentence would be contrary to the law, Title 18 U.S.C. § 3585(b), and Bureau of Prisons policy.

Therefore, based on the foregoing, we have accurately computed your sentence computation as starting on July 31, 2007, the date you were re-paroled from New York State.

*Id*. at 8-9.  Petitioner exhausted his administrative remedies by appealing the denial to the Regional Office and Central Office.  *See id*. at 2-7.

During the administrative grievance process Petitioner also argued that he should receive a nunc pro tunc retroactive designation, and that the BOP should exercise its discretion to designate a state prison as the place for service of a federal sentence.  *Id*.  On May 6, 2015, the BOP sent a letter to Judge Mordue to obtain the Court's position regarding the granting of a retroactive designation allowing Petitioner's federal sentence to be served concurrent to his state sentence, explaining, in part, that:

On May 23, 2007, Gregory Thomas was sentenced by the Court to a 360-month (later reduced to 292-month) term of confinement for Conspiracy to Engage in a Pattern of Racketeering Activity.  At the time the federal sentence was imposed, Mr. Thomas was under the primary jurisdiction of state authorities in New York, and in federal custody pursuant to a Writ.  The respective Judgment in Criminal Case was silent regarding any relationship with the forthcoming action in state court.  Following sentencing, Mr.

> Thomas was appropriately returned to state authorities and the U.S. District Court Judgment was filed as a detainer.
>
> On July 31, 2007, Mr. Thomas' state parole was revoked for the offense Criminal Possession of a Controlled Substance and he was re-paroled.
>
> Mr. Thomas satisfied his state obligation on July 31, 2007, and was released to the federal detainer to commence the service of his federal sentence as provided by Title 18 U.S.C. § 3585(a).
>
> Mr. Thomas has requested that his federal sentence be served concurrently with the state term, which would be accomplished by the Bureau of Prisons (Bureau) designating the state institution for service of his federal sentence.  Such action would thereby reduce the total amount of time spent in custody.  In <u>Setser v. United States</u>, ___ U.S. ___, 132 S.Ct. 1463, 192 [ ] (2012) the United States Supreme Court held that the authority to order a federal sentence concurrent or consecutive with any other sentence rests with the federal sentencing court.
>
> Such a retroactive designation is made if the federal sentencing Court indicates the federal term is to be concurrent to the state term, or if the federal sentencing Court does not state its intention, such designation may be completed after the review of all factors under Title 18 U.S.C. § 3621(b).

(Dkt No. 5-10 at 2-3.)

On or about August 10, 2015, Judge Mordue responded both by telephone, and email, as

follows:

> The Judge reviewed your letter dated May 6, 2015, including consideration of the Court's authority to impose a consecutive or concurrent sentence in this case, and after reviewing the case material, he notes it was his intention to have the federal sentence run consecutively with the undischarged state term of imprisonment and therefore, he finds no reason to deviate now from that decision.

(Dkt. No. 5-11 at 2.)  On August 11, 2015, the BOP denied Petitioner's request for a retroactive

designation.  (Dkt. No. 5-12 at 2.)  The BOP specifically considered and applied Judge Mordue's

direction in computing Petitioner's sentence. (Dkt. No. 5-1 at ¶¶ 13,14; *see* Dkt. No. 5-12 at 2.)

At the time of briefing, Petitioner's projected release date was October 29, 2024. *Id.* According to the publicly available website maintained by the BOP, Petitioner's projected release date is now June 26, 2024.[3]

As noted, Petitioner argues that he is entitled to 21 months and 23 days of credit toward his federal sentence, representing time that he spent in state custody between August 2, 2005, and May 23, 2007. (Dkt. No. 1 at 3.) According to Petitioner, his state charges were dismissed in case number I-2005-1205-1 and because he "wasn't found guilty of a crime" in that case, his time in "county jail" should be credited towards his federal sentence pursuant to 18 U.S.C. § 3585(b). *Id.*; *see also* Dkt. No. 1-1 at 36.

Respondent argues for denial of the petition, asserting that the BOP's sentence calculation is correct. (Dkt. No. 5.) Specifically, Respondent argues that (1) Judge Mordue has already denied Petitioner's request for his federal sentence to run concurrently with his state sentence, and Petitioner's request would effectively nullify the direction of the sentencing court; (2) when a state inmate spends time on a federal writ, the federal court merely "borrows" the inmate and he continues serving his state term of imprisonment, which is not credited toward any subsequent federal sentence; and (3) Petitioner is seeking credit for time that has already been credited toward his state term.

In his reply, Petitioner maintains that he was improperly denied credit against his federal sentence from August 2, 2005, through May 23, 2007, because, on March 9, 2006, Onondaga County State Court Judge John J. Brunetti dismissed the state charges in case number I-2005-1205-1, which "was never credited to [his] state or federal sentence." (Dkt. No. 8.) He claims

---

[3] *See* https://www.bop.gov/inmateloc/ (BOP Register Number 13366-052) (last visited June 28, 2021).

the BOP "committed an error, as well as abuse of discretion by acting contrary to law" "by failing to include Petitioner's credit from August 2, 2005 to May 23, 2007 against his federal sentence, in which facts shows was never credited to Thomas' state or federal sentence." *Id*. at 4. Lastly, Petitioner argues that had he "pleaded guilty to those pending state charges and had been sentenced to a period of incarceration, it would have been incumbent upon the district court to sentence [him] to concurrent time to that sentence, pursuant to U.S.S.G. § 5G1.3(b)(2)." *Id*. at 3 (alteration in original).

## III.    DISCUSSION

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A § 2241 petition is generally the appropriate vehicle to raise claims arising from a prison official's computation of a prisoner's sentence. *Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003).

Although a prisoner may later seek judicial review, it is the responsibility of the BOP, and not the courts, to determine the commencement of a federal sentence and calculate any credit toward that sentence for time already served. *Tisdale v. Menifee*, 166 F. Supp. 2d 789, 791 (S.D.N.Y. 2001) (citing *United States v. Montez–Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998)). Thus, with respect to a § 2241 petition challenging the computation of credit on a federal sentence, a district court has the power only to review a decision by the BOP, not to make credit determinations in the first instance. *Wright v. Hudson*, No. 9:12-CV-01638-JKS, 2015 WL 5971055, at *1 (N.D.N.Y. Oct. 14, 2015).

The earliest that a federal sentence may begin to run is on the date that it was imposed. *United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998). The sentence commences when the defendant is received into custody at the detention facility designated by the BOP. 18 U.S.C.

§ 3585(a); *Labeille-Soto*, 163 F.3d at 98.  When a defendant was in primary state custody at the time his or her federal sentence was imposed, the BOP must determine whether the district court intended the federal sentence to run concurrently with, or consecutively to, the state sentence.  18 U.S.C. § 3584(a); *Dutton v. U.S. Attorney Gen.*, 713 F. Supp. 2d 194, 199 (W.D.N.Y. 2010).

If the district court's judgment is silent on this issue, the court's silence is construed as an intent to impose a consecutive sentence, and the federal sentence commences only when primary state custody over the defendant is relinquished.  *Clapper v. Langrod*, 186 F. Supp. 3d 235, 238 (N.D.N.Y. 2016) (citing 18 U.S.C. § 3584(a)).  An inmate in this situation may ask the BOP for a retroactive designation of the non-federal prison as the institution for service of the federal sentence.  *Id.* (citing 18 U.S.C. § 3621(b)).  The BOP then considers the inmate's personal circumstances in relation to the factors set forth at 18 U.S.C. § 3621(b) to determine if a nunc pro tunc designation is consistent with the intent of the federal sentencing court or the criminal justice system.  *Id.*  "The [BOP's] decision regarding nunc pro tunc designation is reviewed for abuse of discretion."  *Jennings v. Schult*, 377 F. App'x 97, 98 (2d Cir. 2010) (summary order).

If, however, the district court explicitly stated the federal sentence should run concurrently with the state sentence, the BOP will "designate the State correctional facility as the place for the defendant to serve his Federal sentence," and the federal sentence "will be deemed to commence upon imposition."  *Clapper*, 186 F. Supp. 3d at 238 (quoting *Dutton*, 713 F. Supp. 2d at 199 (citing 18 U.S.C. §§ 3585(a), 3621(b))).

When the BOP calculates any credit toward a federal sentence from time served before the sentence was imposed, 18 U.S.C. § 3585(b) requires that the defendant "receive credit only for detention time 'that has not been credited against another sentence.'"  *United States v. Wilson*, 503 U.S. 329, 333 (1992) (quoting 18 U.S.C. § 3585(b)).  Therefore, under 18 U.S.C. §

3585(b), the BOP cannot grant an inmate credit toward the federal sentence for the same period

of time in custody that has also been credited toward a state sentence.  *Id*. at 337 ("Congress

made clear that a defendant could not receive a double credit for his detention time."); *see Lopez

v. Terrell*, 654 F.3d 176, 184-85 (2d Cir. 2011) (explaining that the BOP is prohibited from

crediting time against a federal sentence that was already credited against a state sentence); *see

also Ortiz v. Breckon*, No. 9:17-CV-559 (LEK), 2018 WL 557879, at *3 (N.D.N.Y. Jan. 22,

2018) ("Time that has been credited to a state sentence may not also be credited toward a federal

sentence because [18 U.S.C.] § 3585(b) prohibits defendants from receiving 'double credit for

[their] detention time.'") (alteration in original) (quoting *Wilson*, 503 U.S. at 337 (other citations

omitted)).

        In this case, the BOP calculated Petitioner's federal sentence beginning on July 31, 2007,

the same date he was released on parole from the State of New York.  (Dkt. No. 5-1 at ¶ 15.)  He

received five days of jail credit from April 14, 2005, through April 18, 2005.  *Id*.  Because the

time between August 2, 2005, and May 27, 2007, was credited to Petitioner's state sentence for

the parole violation, the BOP was correct not to credit it towards his federal sentence.[4]  *See

Labeille-Soto*, 163 F.3d at 99 ("[A] defendant has no right to credit on his federal sentence for

time that has been credited against his prior state sentence."); *Reynolds v. Warden of FCI Ray

Brook*, No. 9:16-CV-1264 (TJM/TWD), 2020 WL 918766, at *1 (N.D.N.Y. Feb. 26, 2020)

(petitioner is not entitled to credit against a federal sentence for time he spent incarcerated that

counted towards the term of his state sentence), *aff'd*, ___ F. App'x ____, 2021 WL 2550413 (2d

---

[4]  Although Petitioner claims that the time he spent in state custody from August 2, 2005, to May
23, 2007, was "never credited to [his] state or federal sentence," (Dkt. No. 8 at 4), the record
demonstrates the 21 months and 23 days for which he seeks credit on his federal sentence were
credited against his state sentence.  (*See* Dkt. No. 5-15 at 8, indicating "total credit given to
parole revocation 843 days from 04-19-2005 to 07-31-2007".)

Cir. June 22, 2021); *see also United States v. Fermin*, 252 F.3d 102, 108 n.10 (2d Cir. 2001)

("The Bureau of Prisons could not credit Fermin for the time he had already served because it

was credited against another sentence -- the state parole violation . . . .").

To the extent Petitioner argues that his federal sentence should be deemed to have

commenced as of August 5, 2005, when he first entered federal custody pursuant to the writ of

habeas corpus ad prosequendum, this argument fails. As Respondent correctly notes, "[w]hen a

state prisoner is transferred into federal custody pursuant to the writ, the state retains primary

custody over him or her because the prisoner is 'on loan' to federal authorities." (Dkt. No. 5 at

4, quoting *Clapper*, 186 F. Supp. 3d at 239.); *see also United States v. Smith*, 812 F. Supp. 368,

371 (E.D.N.Y. 1993) ("A federal writ of habeas corpus ad prosequendum merely loans the

prisoner to federal authorities."); *id.* at 371 ("A federal sentence does not begin to run . . . when

the defendant is produced for prosecution in federal court pursuant to a federal writ of habeas

corpus ad prosequendum. Rather, the state retains primary jurisdiction over the prisoner, and

federal custody commences only when the state authorities relinquish the prisoner on satisfaction

of the state obligations."). Additionally, the date of August 5, 2005, precedes his May 23, 2007,

sentencing by almost two years and, as noted above, "under 18 U.S.C. § 3585(a), a federal

sentence cannot commence prior to the date on which it is imposed." *Lopez v. Terrell*, 654 F.3d

176, 185 (2d Cir. 2011).

Moreover, to the extent Petitioner arued during the administrative grievance process that

he should receive a nunc pro tunc retroactive designation, the Court concludes that the BOP did

not abuse its discretion in denying Petitioner's request to designate his state facility as his place

of federal confinement, either for the duration of his state custody or for the period that he was

temporarily transferred to federal custody. As discussed above, the BOP contacted Judge

Mordue for the Court's position on a concurrent designation and, thereafter, considered the 18

U.S.C. § 3621(b) factors, including "any statement by the court that imposed the sentence," and

ultimately denied Petitioner's request. (Dkt. No. 5-1 at ¶¶ 13,14; *see* Dkt. Nos. 5-10 through 5-

12, 5-15.) *See, e.g.*, *Wright*, 2015 WL 5971055, at *1 (dismissing § 2241 petition where the

record showed that the BOP considered the 18 U.S.C. § 3621(b) factors). As pointed out by

Respondent, the BOP calculated Petitioner's sentence exactly as directed by the sentencing

judge. (Dkt. No. 5 at 3-4.) *See also Ortiz*, 2018 WL 557879, at *3 ("Because the BOP lacked

authority to designate the state facility as Petitioner's place of federal confinement—thereby

causing his sentences to run concurrently, defying the federal sentencing court's intent—it did

not abuse its discretion by denying Petitioner's request for a nunc pro tunc designation.").

Lastly, Petitioner suggests in his reply memorandum that had he "pleaded guilty to those

pending state charges and had been sentenced to a period of incarceration, it would have been

incumbent upon the district court to sentence [him] to concurrent time to that sentence, pursuant

to U.S.S.G. § 5G1.3(b)(2)." (Dkt. No. 8 at 3, alteration in original.) "But arguments raised for

the first time in a reply memorandum are waived and need not be considered." *Cotona v. Fed.*

*Bureau of Prisons*, No. 13 CIV. 609 JMF, 2013 WL 5526238, at *2 (S.D.N.Y. Oct. 7, 2013)

(citing *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010); *Cioffi v.*

*Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 169 (2d Cir. 2006)).[5]

---

[5] In any event, to the extent Petitioner "is arguing for relief under Section 5G1.3(b), this issue is
more appropriately resolved by the sentencing court pursuant to a motion under Section 2255
rather than this Court pursuant to a petition under Section 2241." *Reynolds*, 2019 WL 8064012,
at *2 n.2 (citing *Dixon v. Terrell*, No. 10-CV-5262, 2011 WL 4543712, at *11 (E.D.N.Y. Sept.
29, 2011); *Jackson v. Killian*, No. 08–CV–4386, 2009 WL 1835004, at *3 (S.D.N.Y. June 23,
2004) ("Challenging the sentencing court's section 5G1.3 calculation is 'more appropriately
brought as an issue for the sentencing court pursuant to a motion under [S]ection 2255, rather
than the district court in a [S]ection 2241 habeas petition where petitioner is held in custody.'"
(quoting *Saunders v. Unnamed Warden*, No. 07-CV-4293, 2008 WL 2775763, at *7 (D.N.J. July

Based on the foregoing, all of Petitioner's jail time has been credited to either his federal or state sentence, and the BOP's calculations are correct. Any remaining arguments are without merit.

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED** that the petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Petitioner, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**</u> *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: June 28, 2021
         Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

14, 2008) (denying habeas petition pursuant to Section 2241 where petitioner argued that he was entitled to a downward departure or sentence reduction under Section 5G1.3)))). The Court expresses no opinion on the success of any such motion.

Case 9:18-cv-00430-MAD-TWD    Document 15    Filed 06/28/21    Page 13 of 53

Ortiz v. Breckon, Not Reported in Fed. Supp. (2018)
2018 WL 557879

2018 WL 557879
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nathaniel ORTIZ, Petitioner,
v.
Warden BRECKON, Respondent.

9:17-CV-559 (LEK)
|
Signed 01/22/2018

**Attorneys and Law Firms**

Nathaniel Ortiz, Ray Brook, NY, pro se.

Charles E. Roberts, Office of the United States Attorney, Syracuse, NY, for Respondent.

## DECISION AND ORDER

Lawrence E. Kahn, U.S. District Judge

## I. INTRODUCTION

**\*1** Petitioner Nathaniel Ortiz, presently in the custody of the Federal Bureau of Prisons ("BOP"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the BOP's computation of his sentence. Dkt. Nos. 1 ("Petition"), 1-1 ("Memorandum"). Respondent Warden Breckon opposes the Petition, Dkt. Nos. 10 ("Response"), 10-1 to -14 ("Exhibits"), and Petitioner filed a reply, Dkt. No. 12 ("Reply"). For the reasons that follow, the Petition is denied.

## II. BACKGROUND

On June 6, 2008, Petitioner was sentenced to nine years' imprisonment following his conviction for attempted murder in the second degree in the New York State Supreme Court, Bronx County. Response at 1; Dkt. No. 10-3 ("Exhibit B"). On July 3, 2008, Petitioner was temporarily transferred to federal custody pursuant to a writ of habeas corpus ad prosequendum to answer unrelated federal criminal charges. Dkt. No. 10-1 ("Johnson Declaration") ¶ 7; Dkt. No. 10-6 ("Exhibit E") (Judgment, United States v. Ortiz, No. 08-CR-548-01 (S.D.N.Y. Nov. 11, 2009), ECF No. 200). [1]

---

[1]     Petitioner asserts that he was transferred to a federal holding facility on July 7, 2008, rather than July 3.

Mem. at 3. To the extent that the parties disagree on the date of Petitioner's temporary transfer to federal custody in July 2008, the disagreement is not material to the Court's disposition of the Petition.

On October 28, 2009, the Honorable Denny Chin, then-United States District Judge of the Southern District of New York, sentenced Petitioner to life imprisonment following his conviction for conspiracy to distribute and possess with intent to distribute "crack" cocaine and a related firearm charge. Johnson Decl. ¶ 8; Ex. E; Dkt. No. 10-9 ("Exhibit H") at 2–3. The federal judgment did not state whether his life sentence would run consecutively or concurrently with his nine year state sentence, but the court recommended that Petitioner "be returned to the state facility to complete his state sentence" and "be designated to a facility in the North East region to serve his federal sentence." Ex. E at 3. New York State authorities retained primary jurisdiction over Petitioner while he was in federal custody pursuant to the writ, and the United States Marshals Service returned him to state custody after his federal proceedings to continue service of his state sentence. Johnson Decl. ¶ 8. On December 3, 2015, Petitioner was released on parole from the New York State Department of Corrections and Community Supervision ("DOCCS") to the Marshals Service to commence his federal sentence. Id. ¶ 9. Service of his federal life sentence was computed as commencing on that date. Id. ¶ 10.

In April 2012, before he completed serving his state sentence, Petitioner filed a motion in the Southern District pursuant to 18 U.S.C. § 3582, requesting that the court (1) re-sentence him under the Fair Sentencing Act to a term of 360 months' incarceration, and (2) order that his federal sentence run concurrent to his state sentence. Ex. H; Mot., Ortiz, No. 08-CR-548 (S.D.N.Y. Apr. 16, 2012), ECF No. 274. Judge Chin granted Petitioner's motion to reduce his sentence to 360 months' imprisonment, but denied his request to order that the sentence run concurrent to his state sentence. Ex. H at 7.

## III. THE PETITION

**\*2** On July 27, 2016, Petitioner requested "time credit under 'nunc pro tunc' status" for the time during which he was temporarily held in federal custody to answer to his federal charges by filing a request for administrative relief. Mem. at 4, 7. On July 28, 2016, Petitioner's request was denied because, during that period, he was "technically 'in service' of [his] New York State sentence, and policy prohibits applying such credit when the time is applied towards another sentence." Id.

Ortiz v. Breckon, Not Reported in Fed. Supp. (2018)

Case 9:18-cv-00430-MAD-TWD   Document 15   Filed 06/28/21   Page 14 of 53

2018 WL 557879

at 7. Petitioner appealed the determination and, on February 23, 2017, the appeal was denied because "[t]he sentencing Court has been clear in its intent that [his] federal sentence be served consecutively to [his] state term." Id. at 10.

Petitioner argues that, in denying his request for a nunc pro tunc designation of his state facility as his place of federal confinement, the BOP abused its discretion because it failed to consider the factors set forth in 18 U.S.C. § 3621(b). Pet. at 6; Mem. at 3–5; Reply at 2–4. He requests an order granting him "credit under nunc pro tunc status from the date [o]n which he was transferred to a federal facility MCC New York [on] July 7, 2008[,] up until the time he was released from state custody to federal custody," or, in the alternative, "credit from July 7, 2008, up until December 9, 2009." Mem. at 5. Respondent argues that, because Judge Chin ordered that Petitioner's federal sentence run consecutive to his earlier-imposed state sentence, he was not entitled to a nunc pro tunc designation. Response at 3–4. Additionally, Respondent argues that Petitioner already received credit against his state sentence for the time during which he was temporarily released to federal custody, precluding an award of prior custody credit for that time period. Id. at 4 (citing § 3585(b)).

## IV. DISCUSSION

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States[.]" § 2241(c)(3). A petition is properly brought pursuant to § 2241 where a federal prisoner challenges the execution of his or her sentence, rather than the imposition of the sentence. Adams v. United States, 372 F.3d 132, 134–35 (2d Cir. 2004); Jiminian v. Nash, 245 F.3d 144, 146–47 (2d Cir. 2001). Execution of a sentence includes, among other things, the computation of the sentence, and thus a § 2241 petition is the proper means to challenge the computation. Adams, 372 F.3d at 135 (citing Nash, 245 F.3d at 146).

"The Attorney General, through the BOP, possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b)[.]" United States v. Whaley, 148 F.3d 205, 206 (2d Cir. 1998) (collecting cases). 18 U.S.C. § 3584(a) provides in part that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." This provision notwithstanding, the Second Circuit has held that the BOP has the authority, pursuant to 18 U.S.C. § 3621, to retroactively "designate the state facility in which the prisoner was serving his state sentence as the place of federal confinement—with the result that, if the BOP made such a designation,

the prisoner's sentences would effectively run concurrently." Abdul-Malik v. Hawk-Sawyer, 403 F.3d 72, 75 (2d Cir. 2005) (citing McCarthy v. Doe, 146 F.3d 118, 122–23 (2d Cir. 1998) and Barden v. Keohane, 921 F.2d 476, 478 (3d Cir. 1990)); see also Setser v. United States, 566 U.S. 231, 235–36 & n.1 (2012) (explaining that although the federal sentencing judge has authority to determine whether sentences should run consecutively or concurrently pursuant to § 3584, § 3621(b) confers authority to the BOP to determine the facility in which a prisoner's federal sentence will be served, including nunc pro tunc designations either while the prisoner is in state custody or when he or she enters federal custody). [2] "The [BOP's] decision regarding nunc pro tunc designation is reviewed for abuse of discretion." Jennings v. Schult, 377 Fed.Appx. 97, 98 (2d Cir. 2010) (summary order) (citing McCarthy, 146 F.3d at 123 n.4). [3]

[2]   In Setser, the Supreme Court noted that § 3621(b) is "a conferral of authority on the [BOP], but does not confer authority to choose between concurrent and consecutive sentences," which is "the sort of decision committed to the district court in § 3584(a)." 566 U.S. at 239.

[3]   Section 3621(b) provides that the BOP may designate, as the place of a prisoner's imprisonment, "any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau," whether the facility is "maintained by the Federal Government or otherwise." BOP must consider five factors in determining the facility: (1) the contemplated facility's "resources"; (2) the "nature and circumstances" of the prisoner's offense; (3) the prisoner's "history and characteristics"; (4) any statement by the sentencing court "concerning the purposes for which the sentence to imprisonment was determined to be warranted" or recommending a type of facility as appropriate; and (5) "any pertinent policy statement issued by the Sentencing Commission." § 3621(b)(1)–(5).

*3   The Court concludes that the BOP did not abuse its discretion in denying Petitioner's request to designate his state facility as his place of federal confinement, either for the duration of his state custody or for the period that he was temporarily transferred to federal custody. As noted above, the 2009 federal sentencing judgment is silent as to the manner in which Petitioner's federal sentence

Case 9:18-cv-00430-MAD-TWD   Document 15   Filed 06/28/21   Page 15 of 53

Ortiz v. Breckon, Not Reported in Fed. Supp. (2018)
2018 WL 557879

was to run relative to his state sentence. Ex. E. "If the district court's judgment is silent on this issue, the court's silence is construed as an intent to impose a consecutive sentence, and the federal sentence commences only when primary state custody over the defendant is relinquished." Clapper v. Langford, 186 F. Supp. 3d 235, 238 (N.D.N.Y. 2016) (Kahn, J.) (citing § 3584(a)); see also § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."). Notably, in his May 30, 2013 order re-sentencing Petitioner to 360 months, Judge Chin explicitly denied Petitioner's request to order that his federal sentence run concurrent to his state sentence. Ex. H at 7. "[T]he BOP lacks ... authority [to designate, nunc pro tunc, the state facility as a federal prison] when the federal sentencing court imposes sentence after the state and fails to note whether a sentence should be consecutive or concurrent." Jennings, 377 Fed.Appx. at 98; see also Setser, 566 U.S. at 239 ("When § 3584(a) specifically addresses decisions about concurrent and consecutive sentences, and makes no mention of the [BOP's] role in the process, the implication is that no such role exists.").

In sum, the Southern District imposed sentence after the state court, initially failed to note whether the sentence should run consecutive to or concurrent with the state sentence, and, thereafter, stated explicitly that the sentence should run consecutively. The BOP plainly considered the federal sentencing court's judgment in making its determination. Because the BOP lacked authority to designate the state facility as Petitioner's place of federal confinement—thereby causing his sentences to run concurrently, defying the federal sentencing court's intent—it did not abuse its discretion by denying Petitioner's request for a nunc pro tunc designation. See Jennings, 377 Fed.Appx. at 98 ("[B]ecause Appellant was subject to an undischarged state term of imprisonment at the time the federal court resentenced him, and because the federal court did not direct that its sentence should run concurrently, the statute required that the sentence run consecutively, and the [BOP] was without authority to direct otherwise."); Wright v. Hudson, No. 12-CV-1638, 2015 WL 5971055, at *4 n.4 (N.D.N.Y. Oct. 14, 2015) ("The BOP does not have authority to decide whether a sentence should run concurrently or consecutively to other sentences where the statutory presumptions of 18 U.S.C. § 3584(a) are applicable," i.e., where "a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment." (quoting § 3584(a))).

Moreover, the BOP properly denied Petitioner's request for credit against his federal sentence for time served while he was temporarily held at a federal facility pursuant to a writ of habeas corpus ad prosequendum. "Under 18 U.S.C. § 3585(b), federal defendants may receive credit for time spent in official detention before the date the federal sentence commences" if either "(1) the detention was the result of the offense for which the federal sentence is ultimately imposed," or "(2) the detention was the result of other charges for which the defendant was arrested after the commission of the offense for which the sentence was imposed, as long as that time has not been credited against another sentence." Clapper, 186 F. Supp. 3d at 239. "Time that has been credited to a state sentence may not also be credited toward a federal sentence because § 3585(b) prohibits defendants from receiving 'double credit for [their] detention time.'" Id. (alteration in original) (quoting United States v. Wilson, 503 U.S. 329, 337 (1992)); see also Cruz v. Walsh, 633 Fed.Appx. 794, 794–95 (2d Cir. 2015) (summary order) ("New York gained primary jurisdiction over Cruz when he was arrested pursuant to a New York warrant, retained that jurisdiction throughout his federal proceedings, and did not relinquish that jurisdiction until he had completed his state sentences."). Here, because Petitioner's temporary transfer to federal custody did "not shift the primary jurisdiction of custody to federal authorities," and he continued to earn credit toward his state sentence, Johnson Decl. ¶¶ 7, 10, the BOP did not abuse its discretion in denying his request for credit against his federal sentence for the same time period, see, e.g., Gonzalez v. United States, No. 03-CV-359, 2005 WL 3543699, at *2 (S.D.N.Y. Dec. 28, 2005) ("Gonzalez will receive credit against his state sentence for the time between his transfer to the custody of the U.S. Marshals Service and the imposition of his federal sentence, since 'transfer of an inmate to federal court pursuant to a writ of habeas corpus ad prosequendum does not amount to a relinquishment of primary jurisdiction.'" (quoting Rosemond v. Menifee, 137 F. Supp. 2d 270, 273 (S.D.N.Y. 2000))).[4]

4    Petitioner has not argued that the time during which he was temporarily transferred to a federal facility to address his federal charges was not credited against his state sentence.

## V. CONCLUSION
**\*4** Accordingly, it is hereby:

ORDERED, that the Petition (Dkt. No. 1) is **DENIED and DISMISSED** in its entirety; and it is further

2018 WL 557879

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because Petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires; [5] and it is further

[5]   Miller-El v. Cockrell, 537 U.S. 322, 336–37 (2003).

**ORDERED**, that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 557879

---

**End of Document**                           © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:18-cv-00430-MAD-TWD    Document 15    Filed 06/28/21    Page 17 of 53
Reynolds v. Warden of FCI Ray Brook, Slip Copy (2020)
2020 WL 918766

2020 WL 918766
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas REYNOLDS, Petitioner,
v.
WARDEN OF FCI RAY BROOK, Respondent.

9:16-CV-1264 (TJM/TWD)
|
Signed 02/26/2020

**Attorneys and Law Firms**

Bernard V. Kleinman, Law Office of Bernard V. Kleinman, PLLC, Somers, NY, for Petitioner.

Charles E. Roberts, William F. Larkin, Office of the United States Attorney, Syracuse, NY, for Respondent.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

**\*1** Currently before the Court is Thomas Reynolds's ("Reynolds") amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 (hereinafter "Section 2241"). Dkt. No. 16. Reynolds claims that he is entitled to a thirty-three-month credit on his forty-two-year federal prison sentence under 18 U.S.C. § 3585 (hereinafter "Section 3585") and the United States Sentencing Guidelines("U.S.S.G.") § 5G1.3(b) (hereinafter "Section 5G1.3(b)"). The matter was referred to the Hon. Thérèse W. Dancks, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In her August 25, 2019 Report-Recommendation ("Rep. Rec."), Magistrate Judge Dancks recommends that Reynolds' amended petition for a writ of habeas corpus, Dkt. No. 16, be denied and dismissed in its entirety. Dkt. No. 41. Reynolds, through counsel, filed timely objections to this recommendation. Dkt. No. 44.

**II. BACKGROUND**

Magistrate Judge Dancks recites the relevant background of this case. See Rep. Rec., at 2-3. Suffice it to say for purposes of addressing Reynolds' objections, Reynolds was resentenced on January 7, 2004 by the Hon. Edward R. Korman, U.S.

District Judge in the Eastern District of New York, to a forty-two-year prison sentence pursuant to a Fed. R. Crim. P. 11(c)(1)(C) guilty plea to racketeering conspiracy (18 U.S.C. § 1962) and bank larceny (18 U.S.C. § 2113). [1] In October 2016, Reynolds filed a letter before Judge Korman which argued that Judge Korman and the United States Probation Office failed to address whether Reynolds merited credit under Section 5G1.3(b) and Section 3585(b) for nine months —between June 1999 and February 2000—he spent in federal custody while serving a state sentence. Dkt. No. 1-1 at 1-2. Judge Korman treated the letter as a petition for a writ of habeas corpus under Section 2241, and ordered the case transferred to this court because Reynolds is incarcerated in the Northern District of New York at F.C.I. Ray Brook in Ray Brook, New York. Dkt. No. 2. On November 28, 2016, Reynolds filed an amended petition for a writ of habeas corpus under Section 2241. Dkt. No. 16. In his amended petition, Reynolds claims that he is entitled to a thirty-three-month credit on his federal prison sentence under Section 3585(b) and Section 5G1.3(b) because he was incarcerated on a state charge that was related to his ultimate federal sentence. Id. After addressing two procedural issues that are not in issue here, Magistrate Judge Dancks concluded:

> [I]t is irrelevant whether Reynolds' time in state custody might satisfy Section 5G1.3(b)'s requirements because this petition seeks the Court's review of the [Bureau of Prisons' ("BOP") ] decision under Section 3585. When properly confined to the salient issue, Reynolds' petition lacks merit. To wit, Reynolds seeks credit for thirty-three-months he spent in state custody while he was admittedly serving his state sentence and receiving credit against his *state* sentence. Under Section 3585(b), a defendant may only receive credit for time in custody "that has not been credited against another sentence." 18 U.S.C. § 3585(b). Accordingly, the Court finds Reynolds is not entitled to credit against a federal sentence for time he spent incarcerated that counted towards the term of his state sentence. See United States v. Wilson, 503 U.S. 329, 337 (1992); United States v. Labeille–Soto, 163 F.3d 93, 99 (2d Cir. 1998); Werber v. United States, 149 F.3d 172, 173 (2d Cir. 1998).

**\*2** Rep. Rec., at 11 (emphasis in original, footnote omitted).

1     On February 23, 2001 Reynolds was sentenced to life imprisonment. Reynolds thereafter filed a petition under 28 U.S.C. § 2255 to vacate his

original guilty plea and sentence, which Judge Korman granted on July 25, 2003.

## III. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a de novo determination to the extent that a party makes specific objections to a magistrate's findings). When performing a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). "However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance." *Monroe v. Kocienski*, No. 9:17-CV-1050 (GTS/DEP), 2019 WL 409412, at *2 (N.D.N.Y. Feb. 1, 2019)(citing, *inter alia, Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.")(internal quotation marks and citations omitted); *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate")). "Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance." *Id.* (citing *Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted)); *see also Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 51 (E.D.N.Y. 2015)("[A] district court generally will not consider new arguments raised for the first time in objections to a magistrate judge's report and recommendation that could have been raised before the

magistrate but were not.")(citing cases); *Santiago v. City of New York*, No. 15-cv-517, 2016 WL 5395837, at *1 (E.D.N.Y. Sept. 27, 2016), *aff'd*, 697 F. App'x 36 (2d Cir. Sept. 6, 2017) ("[C]ourts ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.") (quotations and citation omitted)). "[F]or the district judge to review new evidence or arguments would reduce the magistrate's work to something akin to a meaningless dress rehearsal," *Michalow v. East Coast Restoration & Consulting Corp.*, No. 09-cv-5475, 2018 WL 1559762, at * 6 (E.D.N.Y. Mar. 31, 2018)(quotations and citation omitted), and would frustrate the congressional objective behind § 636(b)(1) which is intended to alleviate the congestion of litigation in the district courts. *Cf. U.S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("[T]o construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term '*de novo*' does not indicate that a secondary evidentiary hearing is required.")). After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

## IV. DISCUSSION

**\*3** To the extent that Reynolds objects on the ground that the record is devoid of indication that some or all of the 33 months for which he seeks credit on his federal sentence were credited against his state sentence, *see* Dkt. No. 44, at ECF pp. 16-20, the objection is overruled. The arguments underlying this objection could have been but were not presented to Magistrate Judge Dancks and, therefore, the Court need not consider them. Further, the arguments are contradicted by Reynolds' assertions in this matter. *See* Dkt. No. 16-1, at ECF pp. 1-2;[2] 17-18;[3] 17, fn. 12;[4] 20;[5] 29.[6]

[2] ("It is the position of the Petitioner that the lower Court erred, at the time of sentencing, in its failure to grant credit to the Petitioner for the amount of time he had spent while in the custody and care of the New York Department of Corrections and Community Supervision ("DOCCS") for a New York State conviction, as set forth below.")

3     ("On February 11th, 2000, Reynolds, though in federal custody, was formally discharged from his state sentence. Thus, the amount of time Reynolds was in state custody on [his conviction for Criminal Possession of a Weapon in the Third Degree in violation of N.Y. Penal L. § 265.02] (to which he merits credit) was as follows: April 7, 1995 to February 1996: 7 months[,] March 17, 1996 to August 7, 1997: 15 months[,] December 1997 to January 4, 1999: 3 months (only three months were credited to the underlying state charge)[,] June 1, 1999 to June 10, 1999: 10 days[,] June 10, 1999 to February 11, 2000: 8 months (Federal custody while serving state sentence (concurrent time))[.] The total amount of Credit Time (under § 5G1.3) thus comes to 33 months.")

4     ("It is the position of the Petitioner that his entitlement to credit on the state charge includes the time spent in the halfway houses.")

5     ("It is the Petitioner's position, herein, that the sentencing Court should have granted him a credit as against his federal sentence of the time that he was in custody (as that term is defined by the courts) under the State conviction in April 1995. According to the Petitioner's calculation, he is merited a credit of 33 months on his time held by the federal Bureau of Prisons.")

6     ("It is undisputed that Reynolds merits credit for the time he was still under state custody and turned over to the federal authorities on the habeas corpus ad prosequendum.... This is the period from June 10, 1999 until his formal discharge of sentence on February 11, 2000 — a period of eight months.")

To the extent Reynolds objects on the ground that Magistrate Judge Dancks' ultimate conclusion was erroneous, the objection is overruled. Upon conducting a *de novo* review,

the Court adopts Magistrate Judge Dancks' recommendation for the reasons stated in her thorough report. Further, there is no basis, as Reynolds requests, to "remand the matter to the Eastern District of New York for further proceedings" under Section 2255 instead of dismissing the petition in its entirety. Dkt. No. 44, at 8, fn. 6. The matter before the Court is a petition for a writ of habeas corpus pursuant to Section 2241, not Section 2255. This Court does not have appellate jurisdiction over the decisions of its sister district courts, and therefore remand is inappropriate. Because this Court does not rule on the merits of any potential Section 2255 claim that Reynolds may have, dismissal of the Section 2241 petition does not bar Reynolds from filing a Section 2255 motion in the sentencing court.

**V. CONCLUSION**

For the reasons discussed above, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Dancks' recommendation in the Report-Recommendation, Dkt No. 41, for the reasons stated in her report. Therefore, it is hereby

**\*4** **ORDERED** that Reynolds' amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, Dkt. No. 16, is **DENIED** and **DISMISSED** in its entirety, and it is further,

**ORDERED** that no certificate of appealability ("COA") shall issue because Petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c) (2) requires. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right").

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 918766

---

**End of Document**            © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 2550413
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

Thomas REYNOLDS, Petitioner-Appellant,

v.

WARDEN OF FCI RAYBROOK,
Respondent-Appellee.

20-1321-pr
|
June 22, 2021

Appeal from the United States District Court for the Northern
District of New York (McAvoy, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of said District Court be and it hereby is
**AFFIRMED**.

**Attorneys and Law Firms**

Appearing for Appellant: Bernard V. Kleinman, Somers, N.Y.

Appearing for Appellee: Karen Folster Lesperance, Assistant
United States Attorney, for Antoinette T. Bacon, Acting
United States Attorney for the Northern District of New York,
Albany, N.Y.

Present: ROSEMARY S. POOLER, WILLIAM J. NARDINI,
Circuit Judges. LEWIS A. KAPLAN, District Judge. [1]

[1] Judge Lewis A. Kaplan, District Judge, United
States District Court for the Southern District of
New York, sitting by designation.

**SUMMARY ORDER**

**\*1** Thomas Reynolds appeals from the February 26, 2020
judgment of the United States District Court for the Northern
District of New York (McAvoy, *J.*) denying and dismissing
Reynolds's amended petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2241. Reynolds primarily argues
on appeal that his petition should have been interpreted as
a petition brought under 28 U.S.C. § 2255, and that we
should remand the case to the Eastern District of New York,
the district in which Reynolds was initially sentenced, for
further consideration. We assume the parties' familiarity with
the underlying facts, procedural history, and specification of
issues for review.

Reynolds initially filed a letter regarding his sentence with
his sentencing court in the Eastern District. The court treated
the letter as a petition for recalculation of his sentence
and transferred the case to the Northern District, where
Reynolds was serving his sentence term of imprisonment.
Reynolds proceeded to litigate it as a Section 2241 petition.
He repeatedly sought to keep the case in the Northern
District and informed the court that he sought an order
directing the Bureau of Prisons ("BOP") to credit him for
time in prior custody under 18 U.S.C. § 3585(b). "[W]here
a party assumes a certain position in a legal proceeding, and
succeeds in maintaining that position, he may not thereafter,
simply because his interests have changed, assume a contrary
position, especially if it be to the prejudice of the party
who has acquiesced in the position formerly taken by him."
*Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 39
L.Ed. 578 (1895). This rule "prevents a party from prevailing
in one phase of a case on an argument and then relying
on a contradictory argument to prevail in another phase."
*Pegram v. Herdrich*, 530 U.S. 211, 227 n.8, 120 S.Ct. 2143,
147 L.Ed.2d 164 (2000). Having successfully argued for the
Northern District to retain jurisdiction and litigate his action
as a Section 2241 petition, arguing against the government's
position that the case ought to be dismissed without prejudice
to its refiling in an appropriate court, Reynolds cannot now
argue that the amended petition ought to have been construed
as a Section 2255 petition.

2021 WL 2550413

While Reynolds now argues that the amended petition was properly a Section 2255 petition, both here and before the district court he argued that BOP had an obligation to recalculate his sentence to account for his time in state custody prior to the date of sentencing. The statute governing the calculation of a sentence provides no support for his position. "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences ... that has not been credited against another sentence." 18 U.S.C. § 3585(b). As the district court correctly held, Reynolds's time in custody prior to sentencing was credited to his state sentence.

Reynolds's challenge to the district court's determination of his Sentencing Guidelines range was outside the scope of his Section 2241 petition, and it is beyond the scope of his appeal as well. As the government and the district court both previously noted, Reynolds may still file a Section 2255 petition in the Eastern District. We imply no view as to the timeliness or merits of any such petition.

**\*2** We have considered the remainder of Reynolds's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

**All Citations**

--- Fed.Appx. ----, 2021 WL 2550413 (Mem)

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 5526238
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

John COTONA, Petitioner,
v.
FEDERAL BUREAU OF PRISONS, Respondent.

No. 13 Civ. 609(JMF).
|
Oct. 7, 2013.

*MEMORANDUM OPINION AND ORDER*

JESSE M. FURMAN, District Judge.

**\*1** In this case, brought pursuant to Title 28, United States Code, Section 2241, Petitioner John Cotona challenges a decision by the Bureau of Prisons ("BOP") that he is ineligible for early release under Title 18, United States Code, Section 3621(e) upon successful completion of the BOP's Residential Drug Abuse Program ("RDAP"). Under 28 C.F.R. § 550.55(b)(5)(ii)—enacted pursuant to a congressional delegation of authority, see 18 U.S.C. § 3621(e)(2), and "[a]s an exercise of the [BOP] Director's discretion," 28 C.F.R. § 550.55(b)—inmates with a current felony conviction for "[a]n offense that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives" are ineligible for early release. Relying on that provision, and a paragraph in Cotona's Presentence Report stating that a search of his residence and place of business resulted in the seizure of, among other things, "two firearms, a Winchester 12 gauge shotgun with a pistol-style grip and a .22 caliber long rifle with a scope and empty magazine, miscellaneous ammunition, a double-edged dagger and brass knuckles" (Phillips Decl. Ex. B ¶ 53), the BOP concluded that Cotona was ineligible for early release. Cotona challenges that decision as "arbitrary and capricious" under the Administrative Procedure Act (the "APA").

Cotona's challenge is without merit. First, as the Government argues and Cotona implicitly concedes through his silence on the issue in his reply memorandum of law, the judicial review provisions of the APA do not apply to the BOP's decisions about early release under Section 3621. See 18 U.S.C. § 3625 (providing that the judicial review provisions of the APA "do not apply to the making of any determination,

decision, or order under this subchapter," which includes Section 3621); 5 U.S.C. § 701(a) (providing that the APA does not provide for judicial review of agency actions when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law"); see also, e.g., Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir.2011) ("The plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701–706, do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621–3624."); Wilson v. Baird, No. 3:11–cv–1304 (MRK), 2012 WL 2154209, at \*5 (D. Conn. June 13, 2012) (Kravitz, J.) (same).

Thus, Cotona is entitled to relief only if he can show that, in denying him early release eligibility, BOP acted in excess of its statutory authority or violated some federal constitutional provision. See, e.g., Bradley v. Fisher, No. 5:11–HC–2194–FL, 2012 WL 2590472, at \*2 (E.D.N.C. July 3, 2012) (citing cases). He has not done so. To the extent that Cotona alleges a statutory violation, his challenge fails given the broad discretion BOP has to determine who will receive early release under the statute. See Lopez v. Davis, 531 U.S. 230, 240–43 (2001); LaSorsa v. Spears, 2 F.Supp.2d 550, 554–55 (S.D.N.Y.1998) (Sotomayor, J.). To the extent that Cotona alleges a violation of his due process rights, his challenge fails because he had no constitutionally protected liberty interest in early release under Section 3621(e). See, e.g., Gallegos–Hernandez v. United States, 688 F.3d 190, 195 (5th Cir.2012); Standifer v. Ledezma, 653 F.3d 1276, 1280 (10th Cir.2011); Wilson, 2012 WL 2154209, at \*3. Finally, to the extent that Cotona alleges an equal protection violation, he has not alleged, let alone shown, that he was treated differently from similarly situated inmates due to "purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir.2005).

**\*2** In his reply memorandum of law, Cotona cites United States v. Jones, 869 F.Supp.2d 373 (E.D.N.Y.2012), and asks the Court, "as an alternative request for relief," to order the Probation Department to remove the reference to firearms from his Presentence Report and recommend to the BOP that it reconsider his eligibility for early release. (Reply Mem. 7–8). But arguments raised for the first time in a reply memorandum are waived and need not be considered. See Connecticut Bar Ass'n v. United States, 620 F.3d 81, 91 n. 13 (2d Cir.2010); Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 169 (2d Cir.2006). And, in any event, Cotona's reliance on Jones is misplaced. In that case, the district court merely brought corrections it had made to the defendant's Presentence Report at the time of sentencing to

the BOP's attention. *See* 869 F.Supp.2d at 374–75. Further, the *Jones* Court itself noted that the Second Circuit has "squarely held that Rule 32 [of the Federal Rules of Criminal Procedure] does not, standing alone, 'give a district court jurisdiction to correct inaccuracies in a [Presentence] report after a defendant has been sentenced." 869 F.Supp.2d at 376 (quoting *United States v. Giaimo,* 880 F.2d 1561, 1563 (2d Cir.1989)). It follows that Cotona—who does not even allege that his Presentence Report was inaccurate (let alone that he objected to it at the time of sentencing before the United States District Court for the District of New Jersey)—may not seek modification of the Presentence Report, and certainly may not do so from this Court pursuant to a habeas petition under Section 2241.

For the foregoing reasons, the Petition is DENIED and DISMISSED. It is somewhat unclear whether a certificate of appealability would be required for Cotona to appeal from the Court's decision. *Compare, e.g., Drax v. Reno,* 338 F.3d 98, 106 n. 12 (2d Cir.2003) (reaffirming that the requirement for a certificate of appealability "does not apply to federal habeas proceedings, such as the instant one, brought pursuant to 28 U.S.C. § 2241"), *with Cespedes v. United States,* No. 01–CV–2249 (ILG), 2001 WL 811929, at *1 (E.D.N.Y. June 11, 2001) (noting that the Second Circuit had granted a certificate of appealability in connection with the petitioner's appeal from a prior order treating his Section 2241 petition as a Section 2255 petition). To the extent the requirement does apply, Petitioner has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253; *see also Lozada v. United States,* 107 F.3d 1011, 1014–16 (2d Cir.1997), *abrogated on other grounds by United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997). Moreover, this Court certifies pursuant to Title 28, United States Code, Section 1915(a)(3) that any appeal from this Order could not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

**\*3** The Clerk of the Court is directed to close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5526238

---

2011 WL 4543712
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jermal DIXON, Petitioner,
v.
Warden Duke TERRELL, Respondent.

No. 10–CV–5262 (KAM).
|
Sept. 29, 2011.

**Attorneys and Law Firms**

Jermal Dixon, Salters, SC, pro se.

Richard M. Tucker, U.S. Attorneys Office, Brooklyn, NY, for
Respondent.

**MEMORANDUM AND ORDER**

MATSUMOTO, District Judge.

**\*1** On November 10, 2010, *pro se* petitioner Jermal
Dixon ("petitioner") filed the instant petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2241, challenging the
computation of his sentence and the application of credit for
time he has served in state and federal custody. Petitioner
seeks an order directing the Bureau of Prisons ("BOP") (1)
to amend the total length of his custodial sentence from 144
months to 132 months; and (2) to credit against petitioner's
federal sentence the time he spent in custody from January
26, 2005 through September 29, 2007. (*See generally* ECF
No. 1, Petition for Writ of Habeas Corpus, filed 11/10/2010
("Pet.").) In addition, by letters dated November 14, 2010 and
December 4, 2010, petitioner sought a stay of his transfer
from the Metropolitan Detention Center in Brooklyn, New
York. (*See* ECF No. 2, Letter dated 11/14/2010 from *pro se*
Jermal Dixon; ECF No. 6, Pro Se Brief & Motion Requesting
Stay of Transfer Pursuant to Federal Rules of Civil Procedure
Rule 65, dated 12/4/2010 ("Pet'r Mot. to Stay").) Further, on
August 15, 2011, petitioner moved for summary judgment.
(*See* ECF No. 15, Motion for Summary Judgment, filed
8/15/2011 ("Pet'r Mot. for Summary Judgment").) For the
reasons set forth below, the court denies petitioner's request
for a stay of transfer, dismisses the petition for a writ of habeas
corpus, and denies petitioner's motion for summary judgment.

**BACKGROUND**

On July 8, 2003, petitioner pled guilty in the United States
District Court for the Southern District of New York to
an information (hereinafter the "03–CR–825 information")
charging him with one count of conspiring to distribute
and possess with intent to distribute 50 or more grams of
crack cocaine, in violation of 21 U.S.C. § 846, and one
count of possessing a firearm in furtherance of the narcotics
conspiracy, in violation of 18 U.S.C. § 924(c). (ECF No. 8,
Gov't Letter dated 1/24/2011 ("Gov't 1/24/2011 Ltr.") at 1–2;
Presentence Investigation Report, dated 8/11/2010, attached
as Ex. A to ECF No. 8, Gov't 1/24/2011 Ltr. ("8/11/2010
PSR") ¶¶ 1–5.) Prior to being sentenced for those offenses,
petitioner failed to report to his assigned pretrial services
officer as directed, and on July 1, 2004, a warrant was issued
for his arrest. (ECF No. 8, Gov't 1/24/2011 Ltr. at 2; 8/11/2010
PSR ¶¶ 5, 30.)

On January 26, 2005, petitioner was arrested by the New York
City Police Department ("NYPD") and charged with criminal
possession of a controlled substance in the fourth degree
and aggravated unlicensed operation of a motor vehicle
in the third degree. (8/11/2010 PSR ¶¶ 33, 86.) Petitioner
subsequently pled guilty in New York County Supreme Court
to criminal possession of a controlled substance in the fifth
degree, and on July 26, 2005, he was sentenced to 18 months'
imprisonment.[1] (ECF No. 8, Gov't 1/24/2011 Ltr. at 2 n.3;
ECF No. 1, Pet. at 10; 8/11/2010 PSR ¶ 85.) On January
20, 2006, after nearly a year in state custody, petitioner was
transferred by writ from the custody of the New York State
Department of Correctional Services to federal custody.[2]
(ECF No. 8, Gov't 1/24/2011 Ltr. at 2 n.3; 8/11/2010 PSR ¶¶
33, 87.)

---

[1]    In the Presentence Investigation Report prepared
       for his sentencing on his federal offenses, the
       Probation Department noted that the state offense
       was "related" to the federal offense. (ECF No. 8,
       8/11/2010 PSR ¶ 86; ECF No. 1, Pet. at 10.)

[2]    Petitioner's conditional release date from his state
       sentence was May 5, 2006. Thereafter, had he not
       been in federal custody, petitioner would have been
       on supervised release from his state sentence until

2011 WL 4543712

September 29, 2007. (ECF No. 11, Gov't 2/8/2011 Ltr. at 2.)

**\*2**  On March 4, 2008, petitioner pled guilty, without a plea agreement, to a superseding information (hereinafter the "S1 03–CR–825 information") charging him with one count of conspiring to distribute and possess with intent to distribute 500 grams or more of cocaine contrary to 21 U.S.C. § 846, one count of selling firearms without a license contrary to 18 U.S.C. § 922(a)(1)(A), one count of theft of certain federal funds contrary to 18 U.S.C. § 641, and one count of conspiring to distribute and possess with intent to distribute 50 grams or more of crack cocaine contrary to 21 U.S.C. § 846. (8/11/2010 PSR ¶¶ 6–12; ECF No. 8, Gov't 1/24/2011 Ltr. at 2.) Petitioner also pled guilty to a one-count indictment (hereinafter the "04–CR–646 indictment") charging him with failing to report to pretrial services, in violation of 18 U.S.C. § 3164(a)(1). (8/11/2010 PSR ¶¶ 11–12; ECF No. 8, Gov't 1/24/2011 Ltr. at 2.) Further, he reaffirmed his guilty plea to the two counts in the 03–CR–825 information. (8/11/2010 PSR ¶ 12; ECF No. 8, Gov't 1/24/2011 Ltr. at 2.)

At the sentencing proceeding on March 16, 2009, Judge Jed Rakoff, United States District Judge for the Southern District of New York, imposed an aggregate sentence of 252 months' imprisonment, which included 240 months for the counts in the 03–CR–825 information and the S1 03–CR–825 information, all to be served concurrently, as well as a consecutive sentence of 12 months' imprisonment for the charge in the 04–CR–646 indictment. (ECF No. 11–2, Transcript of 3/16/2009 Sentencing Proceeding ("3/16/2009 Tr.") at 25.) Judge Rakoff noted, however, that he intended to afford petitioner "credit" for the time petitioner spent in state custody from January 26, 2005 through January 20, 2006. (*Id.*) Judge Rakoff stated:

> I'm not totally sure I have the power to definitively order the credit for the state custody, but I will nevertheless state in the judgment that he is to be given—or if it is a bureau of prisons' determination, it is strongly recommended that he be given credit for the period between January 26, 2005 and January 20, 2006, as federal custody credit.

(*Id.*)

The government, however, informed the court that the BOP would not credit petitioner pursuant to 18 U.S.C. § 3585(b) for the time he had spent in prison serving his state sentence. (*Id.* at 27.) Instead, the prosecutor stated, "I believe under [U.S. Sentencing Guidelines Manual section] 5G1.3(b)(1) and (2) ... you have to give a downward adjustment for that period of time. I don't believe the bureau of prisons will credit [petitioner] for the time." (*Id.*) The court agreed and adjusted petitioner's entire sentence downward from 252 months to 240 months, which included "228 [months] on all counts except the one count that's consecutive, and 12 months on that count ...." (*Id.* at 28.)

The written judgments entered by the court on April 6, 2009 stated that petitioner was sentenced to a term of imprisonment of 240 months on all counts in the S1 03–CR–825 information and 240 months on count one in the 03–CR–825 information, all to be served concurrently. (ECF No. 8–2, Judgments dated 4/6/2009 ("4/6/2009 Judgments") at 3, 9.) In addition, the judgments noted that the 240–month sentence was "to be followed by a sentence of twelve (12) months incarceration" for the charge in the 04–CR–646 indictment.[3] (*Id.*) Further, adopting the framework of credit-for-time-served that Judge Rakoff had rejected during the sentencing proceeding, the written judgments stated, "[t]he defendant shall be given federal custody credit for time spent in State custody from January 26, 2005 to January 20, 2006." (*Id.*) The judgments did not state that the sentence was adjusted pursuant to U.S. Sentencing Guidelines Manual section 5G1.3(b). The judgments also imposed concurrent five-year terms of supervised release on all counts. (*See id.* at 4, 10.)

3      Although the judgment in S1 03–CR–0825 stated that the sentence was "to run concurrently with sentence imposed in 03 Cr. 0825(JSR) and to be followed by a sentence of twelve (12) months imposed in 04 Cr. 0825(JSR)," the court presumes that the latter is a typographical error and should have listed S.D.N.Y. docket number 04 Cr. 0646(JSR).

**\*3**  On March 12, 2010, Judge Rakoff entered amended written judgments, reducing the sentences imposed for Count One of the 03–CR–825 information and all counts of the S1 03–CR–825 information to 228 months' imprisonment. (*See* ECF No. 8–3, Judgments dated 3/12/2010 at 3, 9.) Judge Rakoff once again imposed a consecutive 12–month

sentence for the count in the 04–CR–646 indictment for an aggregate of 240 months' imprisonment. (*Id.*) The amended judgments reiterated that petitioner was to receive "credit for time served in State custody from January 26, 2005 to January 20, 2006." (*Id.*) Moreover, the amended judgments again imposed concurrent five-year terms of supervised release on all counts. (*Id.* at 4, 10.)

On September 16, 2010, after the Second Circuit remanded petitioner's case for resentencing, Judge Rakoff reduced petitioner's sentence to a total of 132 months' imprisonment. (*See* ECF No. 8–5, Transcript of 9/16/2010 Sentencing Proceeding ("9/16/2010 Tr.") at 10.) During the resentencing hearing, Judge Rakoff explained that the 132–month sentence included 120 months for the counts in the 03–CR–825 information and the S1 03–CR–825 information, and a consecutive 12–month sentence for the count in the 04–CR–646 indictment. (*Id.* at 3–4, 10–11.)

The Presentence Investigation Report ("PSR") prepared for petitioner's September 16, 2010 sentencing listed as one of the "overt acts" in the criminal enterprise the fact that "[o]n January 26, 2005, [petitioner] possessed cocaine for sale near East 116th Street and Second Avenue in Manhattan." (8/11/2010 PSR ¶ 32.) The "attributable drug amounts" used to calculate petitioner's base offense level were 4.5 kilograms of crack, 33 kilograms of cocaine, and 50 kilograms of marijuana. (*Id.* ¶¶ 35, 45.) The criminal history section of the PSR also listed petitioner's July 26, 2005 state court conviction for possessing crack, but the PSR did not award any criminal history points for that conviction, noting that it considered "related to the instant offense" pursuant to U.S. Sentencing Guidelines Manual §§ 1B1.3 and 4A1.2, Application Note 1.[4] (*Id.* ¶¶ 85–86.) The PSR did not state, however, whether or how petitioner's state court conviction was the basis for an increase in the offense level for his federal offense. *See* U.S. Sentencing Guidelines Manual § 5G1.3(b).

[4]    For the purposes of calculating a defendant's criminal history based on the defendant's prior sentences, U.S. Sentencing Guidelines Manual section 4A1.2, Application Note 1, provides:

"Prior Sentence" means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. *See* [U.S. Sentencing Guidelines Manual] § 4A1.2(a). A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing

on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense. *Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct).* U.S. Sentencing Guidelines Manual § 4A1.2 cmt. 1 (emphasis added).

Petitioner's counsel asked the court to once again "give [petitioner] a 12–month adjustment off his total sentence and note in the judgment as a safety and as a backstop that you have taken off time" for the period that petitioner spent in state custody from January 26, 2005 through January 20, 2006 "because otherwise our experience is that [the] Bureau of Prisons is not going to give him credit for it." (ECF No. 8–5, 9/16/2010 Tr. at 7.) Judge Rakoff denied this request, explaining that "[t]he reduction here is very substantial and my recommendation [during the March 16, 2009 sentencing hearing] to give credit was in the context of a considerably higher sentence." (*Id.* at 8.) Judge Rakoff further stated that the fact that petitioner faced a mandatory minimum sentence of ten years' imprisonment on count one of the S1 03–CR–825 information was "a good independent reason for denying the application" to adjust downward petitioner's sentence. (*Id.* at 9.) He concluded that because "[petitioner] is getting the absolute minimum sentence that is required under Section 3553(a) ... I am not going to give credit for reduction as based on that state time." (*Id.*) Judge Rakoff orally imposed a ten-year period of supervised release. (*Id.* at 7, 11.)

**\*4** On September 27, 2010, Judge Rakoff entered an Order Regarding Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2), which reflected petitioner's new aggregate sentence of 132 months' imprisonment on all counts for the 03–CR–825 information, the S1 03–CR–825 information, and the 04–CR–646 indictment. (*See* ECF No. 8–4, Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 2582(c)(2), dated 9/27/2010 ("9/27/2010 Order") at 2.) The Order further stated, "[e]xcept as provided above, all provisions of the judgment dated 3/16/2009 shall remain in effect." (*Id.*) The Order did not state that the sentence was adjusted pursuant to U.S. Sentencing Guidelines Manual section 5G1.3(b) or note that the supervised release period was ten years.[5]

[5]    Insofar as the period of supervised release stated in the Order Regarding Motion for Sentence Reduction does not reflect the period orally

imposed at the sentencing hearing, the parties may file an application pursuant to Fed.R.Crim.P. 36 with the sentencing court to address this issue. (*See* ECF No. 11, Gov't 2/8/2011 Ltr. at 4.)

As of October 18, 2010, records from the BOP's sentence monitoring computation database reflected that petitioner was serving a 144–month term of imprisonment, beginning on March 16, 2009, the date petitioner was originally sentenced for his federal offenses, with "jail credit" from April 22, 2003 through April 23, 2003 and from September 29, 2007, the date petitioner's period of supervised release on his state sentence ended, through March 15, 2009, the day before petitioner was originally sentenced for his federal offenses. (ECF No. 1, Sentence Monitoring Computation Data, attached to Pet. at 14.) This term of imprisonment was to be followed by a period of supervised release of five years. (*Id.*)

On November 10, 2010, petitioner filed the instant Petition seeking to correct the computation of his sentence. [6] First, petitioner requests that the BOP correct its records to reflect that petitioner is serving a total sentence of 132 months, not 144 months. (ECF No. 1, Pet. at 3–4.) Second, petitioner requests that the BOP update its records to give petitioner credit against his federal sentence for the time he spent in custody from January 26, 2005 to September 29, 2007. [7] (*Id.* at 4.) On December 14, 2010, petitioner filed a purported amendment to his petition, clarifying that his request was for the BOP to give him credit pursuant to U.S.C. § 3585(b). (ECF No. 6–2, Motion & Brief to Amend Filing Pursuant to Rule 15(a)(1)(A) ("Pet'r Mot. to Amend").) He also filed two requests for a stay of his transfer from the Metropolitan Detention Center in Brooklyn, New York to another facility. (*See* ECF No. 2, Letter dated 11/14/2010 from *pro se* Jermal Dixon; ECF No. 6, Pet'r Mot. to Stay.)

[6]     At the time the instant Petition was filed, petitioner was incarcerated at the Metropolitan Detention Center in Brooklyn, New York. (*See* ECF No. 1, Pet. at 2.) On or about December 15, 2010, petitioner was removed from the Metropolitan Detention Center and thereafter was transferred to the United States Penitentiary in Atwater, California. (*See* ECF No. 11, Gov't 2/8/2011 Ltr. at 4.) As of August 8, 2011, when petitioner filed his motion for summary judgment, he was incarcerated at the Federal Correctional Institution Williamsburg in Salters, South Carolina. (*See* ECF

No. 15–1, Pet'r Mot. for Summary Judgment Ex. B at 19.)

[7]     The Petition states that "[m]y time[ ] starts from 01–20–05," (ECF No. 1, Pet. at 3, 4.) However, because petitioner was not in state or federal custody until January 26, 2005, the court assumes petitioner intends to request credit from that date. Similarly, the Petition states that petitioner's "conditional release date [was] 05–20–06." (*Id.* at 4.) According to the BOP, however, petitioner's conditional release date from his state sentence was May 5, 2006. (ECF No. 11, Gov't 2/8/2011 Ltr. at 2.)

Subsequent to the filing of the instant Petition, but before the issues were fully briefed, the government conferred with and sought clarification from the BOP. By letter dated January 24, 2011, the government informed the court that "the BOP database erroneously reflected that the petitioner's total sentence was 144 months" and that the "database has been corrected to reflect that the petitioner's total sentence is 132 months." (ECF No. 8, Gov't 1/24/2011 Ltr. at 3; *see also* ECF No. 9–2, Public Information Inmate Data at 5.) The government also noted that the BOP's records had been corrected to give petitioner credit for time he had served in federal custody since May 6, 2006, the day after his conditional release date from his state sentence. (ECF No. 8, Gov't 1/24/2011 Ltr. at 4; *see also ECF* No. 9–2, Public Information Inmate Data at 5.) As of January 20, 2011, publicly available records reflected that petitioner was serving a 132–month sentence, beginning on March 16, 2009, with "jail credit" from April 22, 2003 through April 23, 2003 and from May 6, 2006 through March 15, 2009, to be followed by a period of supervised release of five years. (*See* ECF No. 9–2, Public Information Inmate Data at 5.) According to the BOP, based on this credit and credit for good time, petitioner's projected release date is December 26, 2015. (*Id.* at 2, 6.)

 **\*5** On January 25, 2011, the court issued an Order directing the government to confer with the BOP and file a letter explaining certain inconsistencies in the record. [8] (*See* Order dated 1/25/2011.) On February 8, 2011, the government responded to the court's inquiries and opposed petitioner's habeas petition. (*See* ECF No. 11, Gov't 2/8/2011 Ltr.) Petitioner filed a reply on April 28, 2011. (*See* ECF No. 13, Reply/Pro Se Brief and Motion to Grant 28 USC 2241, filed 4/28/2011 ("Pet'r Reply").)

8     The court's January 25, 2011 Order provided, in relevant part, that the government must:

> (1) address[ ] how Judge Rakoff's explicit denial of petitioner's application for credit for time-served in state prison, which is set forth on the record at the September 16, 2010 resentencing hearing, can be reconciled with the March 12, 2010 Order Regarding a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c) (2) and the 1/20/11 BOP records; (2) explain[ ] the reason why the 1/20/11 BOP records credit petitioner for time served since May 6, 2006, instead of January 20, 2006, the date on which petitioner was remanded to federal custody; (3) address[ ] how Judge Rakoff's explicit imposition of a 10 year term of supervised release, which is set forth on the record at the September 16, 2010 resentencing hearing, can be reconciled with the March 12, 2010 Order Regarding a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) and the 1/20/11 BOP records, which indicate that petitioner's term of supervision is five years; (4) inform[ ] the court where petitioner is currently incarcerated; and (5) address[ ] petitioner's motion requesting a stay of transfer.

(Order dated 1/25/2011.)

On January 21, 2010, petitioner filed an administrative claim under Administrative Remedy No. 573641, contending that he is entitled to additional credit toward his federal sentence for time spent in custody since January 20, 2006. (*See* ECF No. 15–1, Pet'r Mot. for Summary Judgment Ex. B at 15; ECF No. 13, Pet'r Reply at 7.) The Warden denied petitioner's claim on February 8, 2010 and petitioner appealed to the Regional Office. (ECF No. 15–1, Pet'r Mot. for Summary Judgment Ex. B at 15–16.) The Regional Director denied his appeal on March 30, 2010. (*Id.* at 16.) On May 17, 2010, petitioner appealed to the Central Office Administrative Remedy Appeal.[9] (ECF No. 13, Pet'r Reply at 6.) On March 22, 2011, the Central Office denied petitioner's appeal. (ECF No. 13, Pet'r Reply at 7; ECF No. 15–1, Pet'r Mot. for Summary Judgment Ex. B at 17.) The denial stated:

9     On June 4, 2010, petitioner's administrative appeal was denied because all four copies of his appeal were not legible. (ECF No. 13, Pet'r Reply at 4; ECF No. 15–1, Pet'r Mot. for Summary Judgment

Ex. B at 13.) Petitioner subsequently requested and was granted permission to re-file his appeal, which he did on February 23, 2011. (ECF No. 13, Pet'r Reply at 3; ECF No. 15–1, Pet'r Mot. for Summary Judgment Ex. B at 14.)

> Review of [petitioner's] state documents indicates the state credited [him] with time spent in custody from [his] arrest date, [January] 26, 2005, through [his] release date, May 5, 2006 .... [Petitioner] ha[s] been credited with time spent in the custody of the U.S. Marshals Service from April 22, 2003, through April 23, 2003, and May 6, 2006, the day following [his] conditional release from state custody, through March 15, 2009, the day prior to [petitioner's] federal sentencing. Title 18 U.S.C. § 3585(b) precludes the application of credit for time that has already been credited toward another sentence. Since the additional credit [petitioner is] seeking was credited toward [petitioner's] state sentence, it cannot be credited toward [his] federal sentence.

(ECF No. 13, Pet'r Reply at 7; ECF No. 15–1, Pet'r Mot. for Summary Judgment Ex. B at 17.)

On August 8, 2011, petitioner filed a motion for summary judgment, attaching the record of his administrative appeals, and arguing that because "[there] is no genuine Dispute as [to] the Material fact whether the petitioner exhausted all the administrative remedies available," petitioner is entitled to "relief which is Starting the petitioner['s] time from 1–26–05 for the full 45 months jail time." (ECF No. 15, Pet'r Mot. for Summary Judgment at 1–2.)

### *LEGAL STANDARDS*

#### I. *Pro Se* Pleadings

The court is mindful that a *pro se* pleading is held to less stringent standards than more formal pleadings drafted by attorneys. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Thus, a *pro se* habeas petition should be construed liberally and with a lenient eye. *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983). Because petitioner is proceeding *pro se* in his application for habeas relief, the court will accord his Petition the liberal construction intended for *pro se* litigants.

#### II. 28 U.S.C. § 2241

 **\*6** A petition pursuant to 28 U.S.C § 2241 ("Section 2241") "generally challenges the execution of a federal

prisoner's sentence, including such matters as ... computation of a prisoner's sentence by prison officials ...." *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir.2001); *see also United States v. Jessop,* No. 04–CR–159, 2006 WL 1877143, at *2 n. 1 (N.D.N.Y. July 6, 2006) ("Examples of a proper § 2241 petition include: a challenge to the calculations by the Bureau of Prisons of the credit to be given for other periods of detention, or decisions to deny parole or conditions of confinement.") (citations omitted).

The proper venue for a Section 2241 habeas petition challenging conditions of confinement is the district where the petitioner is confined. *Sullivan v. United States,* No. 02–CV–4947, 2002 WL 32096584, at *2 (E.D.N.Y. Dec.6, 2002) ("A § 2241 petition challenging the execution of a sentence, including the conditions of the inmate's confinement, should be brought in the district court for the district where the prisoner is in custody."); *Jabarah v. Garcia,* No. 08–CV–3592, 2010 WL 3834663, at *4 (S.D.N.Y. Sept.30, 2010) ("The proper venue to bring a § 2241 challenge is the district of confinement."). However, if a petitioner brings a habeas petition in a particular district and then is transferred to another jurisdiction while the petition is pending, the court in which the petition originally was filed retains jurisdiction. *See Rumsfeld v. Padilla,* 542 U.S. 426, 441, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release"). Here, petitioner properly filed his Section 2241 petition in the Eastern District of New York while he was incarcerated at the Metropolitan Detention Center in Brooklyn, New York. (*See* ECF No. 1, Pet. at 2.) Therefore, even though the BOP later transferred petitioner from the facility in Brooklyn to the United States Penitentiary in Atwater, California, and, most recently, to the Federal Correctional Institution Williamsburg in Salters, South Carolina, this court retains jurisdiction over his Section 2241 Petition.

The Second Circuit has established that a prudential prerequisite to federal habeas relief pursuant to 28 U.S.C. § 2241 is the exhaustion of administrative remedies. *See Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001); *United States ex rel. Scranton v. State of New York,* 532 F.2d 292, 294 (2d Cir.1976) ("While 28 U.S.C. Section 2241 does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, decisional law has superimposed such a requirement in order to accommodate principles of federalism."). The exhaustion requirement for Section 2241 petitions "protect[s] the authority of administrative agencies, limit[s] interference in agency affairs, and promot[es] judicial efficiency by resolving potential issues and developing the factual record." *Beharry v. Ashcroft,* 329 F.3d 51, 56 (2d Cir.2003). Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the court that the failure to exhaust should be excused.

*7 *See Carmona,* 243 F.3d at 634. Thus, "[f]ederal inmates who seek to challenge the conditions of their confinement must first utilize the Administrative Remedy Program (the 'Program') developed by the BOP." *Bolling v. Terrell,* No. 10–CV–3594, 2010 WL 5101074, at *2 (E.D.N.Y. Dec. 8, 2010); *see also United States v. Wilson,* 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) (noting that prisoners may seek judicial review of the computation of time credited to their sentence, provided that they first exhaust their administrative remedies); 28 C.F.R. § 542.10–19. Specifically, inmates must exhaust each of four steps in the Program: (1) attempting to resolve the issue informally, *see* 28 C.F.R. § 542.13; (2) submitting a formal written Administrative Remedy Request to the Warden of the institution where the inmate is imprisoned, *see id.* § 542.14; (3) appealing to the BOP Regional Director, *see id.* § 542.15; and (4) appealing to the BOP Office of General Counsel, *see id.* "Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP–11) and ... shall state specifically the reason for appeal." *Id.*

## III. 28 U.S.C. § 2255
In contrast, a motion pursuant to 28 U.S.C § 2255 ("Section 2255") "is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence." *Jiminian,* 245 F.3d at 146. Section 2255 provides that a prisoner in federal custody may collaterally attack his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Collateral relief from a final criminal judgment is available only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun,* 73 F.3d 8, 12 (2d Cir.1995)

(quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

A motion pursuant to Section 2255 must be filed in the district court "which imposed the sentence" being challenged. 28 U.S.C. § 2255(a); *Ndoromo v. Holder,* No. 09–CV–5686, 2010 WL 346684, at *1 (E.D.N.Y. Jan.20, 2010) ("[A] writ of habeas corpus pursuant to 28 U.S.C. § 2255 ... must be brought in the district court which imposed the sentence."). Further, Section 2255 "may not be used as a substitute for a direct appeal." *Marone v. United States,* 10 F.3d 65, 67 (2d Cir.1993) (citing *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). "Generally, a claim 'may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review.' " *Mora v. United States,* No. 08–CV–3826, 2010 WL 2607209, at *2–3 (S.D.N.Y. June 29, 2010) (quoting *Zhang v. United States,* 506 F.3d 162, 166 (2d Cir.2007) and dismissing as procedurally barred petitioner's claims that, *inter alia,* his sentence was calculated incorrectly and his federal and state sentences should run concurrently because petitioner did not raise those claims on direct review).

 **\*8** Moreover, a request for relief pursuant to Section 2255 is generally subject to a one-year statute of limitations, starting from "the date on which the judgment of conviction becomes final ... or the date on which facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1), (4).

### IV. 18 U.S.C. § 3585(b)

Title 18 U.S.C. Section 3585(b) provides, in relevant part, that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences ... as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed ... that has not been credited against another sentence." 18 U.S.C. § 3585(b).

"The Attorney General, through the BOP, possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b)." *United States v. Whaley,* 148 F.3d 205, 206 (2d Cir.1998); *see also United States v. Pineyro,* 112 F.3d 43, 45 (2d Cir.1997). A district court "do[es] not have authority to order the BOP to either grant or deny credit or to disregard the BOP's calculation." *Whaley,* 148 F.3d at 206 (citing *United States v. Wilson,* 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992)); *Evans v. United States,* No. 08–CV–

3830, 2010 WL 2026433, at *5 (E.D.N.Y. May 17, 2010) ("It is well established ... that a determination of credit computation must be made in the first instance by the Bureau of Prisons."). A prisoner who has exhausted all available administrative remedies may, however, seek judicial review of BOP credit determinations by filing a petition pursuant to 28 U.S.C. § 2241. *Whaley,* 248 F.3d at 207 (citing *Wilson,* 503 U.S. at 335); *Pineyro,* 112 F.3d at 46.

### V. U.S. Sentencing Guidelines Manual § 5G1.3

A sentencing court must look to U.S. Sentencing Guidelines Manual section 5G1.3 ("Section 5G1.3") when imposing sentence on a defendant who is already "subject to an undischarged term of imprisonment." U.S. Sentencing Guidelines Manual § 5G1.3. Section 5G1.3(b) provides that if the defendant has an undischarged term of imprisonment for an offense that is "relevant conduct to the instant offense," and the other offense "was the basis for an increase in the offense level for the instant offense," then the court must (1) "adjust the sentence [for the instant offense] for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons;" and (2) impose "the sentence for the instant offense ... to run concurrently to the remainder of the undischarged term of imprisonment." *Id.* § 5G1.3(b).

The Second Circuit has held that "Section 5G1.3 applies only to undischarged sentences, not to sentences that are already completed." *United States v. Wint,* 142 F. App'x 11, 13 (2d Cir.2005) (citing *United States v. Labelle–Soto,* 163 F.3d 93, 98–99 (2d Cir.1998)). "The correct time at which to ascertain whether a defendant is 'already subject to an undischarged term of imprisonment' for purposes of ... Guideline § 5G1.3 is the moment the federal judge imposes the federal sentence." *United States v. Burgos,* 2 F. App'x 134, 136 n. 1 (2d Cir.2001); *United States v. Uzoefune,* 334 F. App'x 360, 363 (2d Cir.2009) (concluding that defendant "was not entitled to an adjustment for his previous 15–month sentence ... because U.S.S.G. § 5G1.3 is inapplicable to defendant as he was not subject to an 'undischarged term of imprisonment' at the time of sentencing; he had completed his sentence for the supervised release violation approximately a year before he was sentenced for the instant offense"); *United States v. Polanco–Ovalle,* No. 98–CR–766, 1999 WL 370638, at *2 (S.D.N.Y. June 7, 1999) ("5G1.3 permits concurrent sentencing only to the extent that there remains an undischarged term of imprisonment.").

*DISCUSSION*

### I. Motion for Stay of Transfer

**\*9** At the time the instant Petition was filed, petitioner was incarcerated at the Metropolitan Detention Center in Brooklyn, New York. By letter dated November 14, 2010 and motion dated December 4, 2010, petitioner sought a stay of his transfer from the Metropolitan Detention Center to another facility. (*See* ECF No. 2, Letter dated 11/14/2010 from *pro se* Jermal Dixon; ECF No. 6, Pet'r Mot. to Stay.) However, on or about December 15, 2010, petitioner was removed from the Metropolitan Detention Center and thereafter was transferred to the United States Penitentiary in Atwater, California. (ECF No. 11, Gov't 2/8/2011 Ltr. at 4.) Further, as of August 8, 2011, when he filed his motion for summary judgment, petitioner was located at the Federal Correctional Institution Williamsburg in Salters, South Carolina. (*See* ECF No. 15–1, Pet'r Mot. for Summary Judgment Ex. B at 19.) Because petitioner already has been transferred, petitioner's motion for a stay of his transfer is denied as moot.

### II. Petition for Writ of Habeas Corpus

#### A. Exhaustion of Administrative Remedies

The government argues that the Petition should be dismissed because petitioner failed to exhaust his administrative remedies. (ECF No. 11, Gov't 2/8/2011 Ltr. at 5.) Specifically, the government asserts that "the BOP has informed the government that the petitioner did not exhaust the administrative remedies available to him before filing the instant application." (ECF No. 11, Gov't 2/8/2011 Ltr. at 5.) However, the government has not provided any further support for this argument.

On the other hand, petitioner argues that he "exhausted all the administrative remedies available to him." (ECF No. 13, Pet'r Reply at 1; *see also* ECF No. 15, Pet'r Mot. for Summary Judgment at 1.) Further, petitioner has provided the court with copies of the denials of his administrative claim by the Warden, the Regional Director, and the Central Office. (*See* ECF No. 15–1, Pet'r Mot. for Summary Judgment Ex. B at 15–17.) Accordingly, although petitioner did not exhaust these steps prior to filing the instant action, he completed each of the steps in the Administrative Remedy Program developed by the BOP as of March 22, 2011, and his administrative remedies are therefore exhausted. Thus, petitioner's Section 2241 petition is properly before this court.

#### B. Computation of Petitioner's Sentence

As an initial matter, petitioner seeks an order directing the BOP to update its records to reflect that petitioner's total sentence is 132 months, and not 144 months. (ECF No. 1, Pet. at 3–4.) By letter dated January 24, 2011, the government informed the court that the BOP has corrected its records to reflect that petitioner's sentence is 132 months. (ECF No. 8, Gov't 1/24/2011 Ltr at 3; *see* ECF No. 9–2, Public Information Inmate Data at 5.) Accordingly, petitioner's request that the BOP update its records to reflect that his sentence is 132 months is denied as moot.

#### C. Credit for Time Served from January 26, 2005 to September 29, 2007

**\*10** Next, petitioner alleges that his "time computation sheet is incorrect" and seeks an order directing the BOP to give him credit against his 132–month federal sentence for the time he spent in custody from January 26, 2005, the date petitioner was arrested by the NYPD, to September 29, 2007, the date petitioner's period of supervised release for his state sentence ended and following which he had already received credit against his federal sentence. (ECF No. 1, Pet. at 4–5.) [10]

> [10]  Petitioner requests credit for "45 months." (ECF No. 1, Pet. at 5; ECF No. 15, Pet'r Mot. for Summary Judgment at 1.) However, the court cannot identify what 45–month period petitioner is referring to.

#### 1. May 6, 2006 to September 29, 2007

By letter dated January 24, 2011, the government informed the court that the BOP has credited against petitioner's federal sentence all of the time he has spent in custody since May 6, 2006, the day after he would have been conditionally discharged from his state sentence. (ECF No. 8, Gov't 1/24/2011 Ltr. at 2, 4; *see* ECF No. 9–2, Public Information Inmate Data at 5; ECF No. 11, Gov't 2/8/2011 Ltr. at 2.) Thus, to the extent that petitioner seeks credit from the BOP for the time he spent in custody from May 6, 2006 to September 29, 2007, his motion is denied as moot.

#### 2. January 26, 2005 to May 5, 2006

Accordingly, the only remaining issue for the court to decide is whether petitioner is entitled to receive credit against his federal sentence for the time he spent in custody from January 26, 2005 to May 5, 2006.

### i. Credit Pursuant to 18 U.S.C. § 3585(b)

Insofar as petitioner seeks "credit" from the BOP for time he spent in custody from January 26, 2005 to May 5, 2006, his request is governed by 18 U.S.C. § 3585(b). [11]

> [11]   In a purported amendment to the petition filed on December 14, 2010, petitioner requested the court to direct the BOP to "apply what law is control[l]ing ... [namely,] 18 USC 3585(b)." (ECF No. 6–2, Pet' r Mot. to Amend at 2.)

The government argues that the BOP has credited against petitioner's federal sentence the maximum time allowed pursuant to 18 U.S.C. § 3585(b), and that crediting against petitioner's federal sentence the time he spent in custody from January 26, 2005 to May 5, 2006 would be inappropriate. (ECF No. 11, Gov't 2/8/2011 Ltr. at 2–3.) The court agrees. In this case, the NYPD arrested petitioner on January 26, 2005, and on July 26, 2005 he was sentenced to eighteen months in prison, which he served between January 26, 2005 and May 5, 2006. (8/11/2010 PSR ¶¶ 33, 85; *see also* ECF No. 11, Gov't 2/8/2011 Ltr. at 2.) The BOP correctly determined that petitioner is entitled to receive credit toward his federal sentence beginning on May 6, 2006, the day after his conditional release from his state sentence, and petitioner has been given credit for that time. (ECF No. 8, Gov't 1/24/2011 Ltr. at 4; ECF No. 11, Gov't 2/8/2011 Ltr. at 2; *see* ECF No. 9–2, Public Information Inmate Data at 5.) Because petitioner's term of imprisonment from January 26, 2005 to May 5, 2006 was "credited against" his state sentence, it cannot also be credited against his federal sentence by the BOP. *See* 18 U.S.C. § 3585(b) (providing that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences ... *that has not been credited against another sentence.*" (emphasis added)); *United States v. Beltre,* No. 05–CR–891, 2008 WL 1752484, at *1 (S.D.N.Y. Apr. 16, 2008) ("It is for the Bureau of Prisons to determine initially when a defendant's sentence is to commence and what credit to give for time served, but the requirement of credit for time served does not apply to time that has been credited toward another sentence."). Accordingly, petitioner's Petition is denied insofar as he seeks credit against his federal sentence pursuant to 18 U.S.C. § 3585(b) for the time he spent in custody from January 26, 2005 to May 5, 2006, when he was serving his state sentence.

### ii. Adjustment Pursuant to U.S. Sentencing Guidelines Manual § 5G1.3(b)

**\*11**   In addition to seeking credit for his prior term of imprisonment pursuant to 18 U.S.C. § 3585(b), petitioner asserts that he was entitled to a downward adjustment of his federal sentence pursuant to U.S. Sentencing Guidelines Manual section 5G1.3(b). (ECF No. 13, Pet'r Reply at 1.) Petitioner argues that because his state offense was "[r]elevant conduct [to his federal offense] under U.S.S.G. [§ ] 1B1.3," the federal sentencing court was obligated to adjust downward his federal sentence to take into account the time he spent in prison serving his sentence for the related offense. (*Id.*) Petitioner emphasizes that on March 16, 2009, Judge Rakoff adjusted downward his sentence by 12 months pursuant to Section 5G1.3(b). (*Id.; see* ECF No. 11–2, 3/16/2009 Tr. at 27.) Petitioner further notes, however, that when he was resentenced on September 16, 2010, Judge Rakoff "refused to downward adjust [ ]" his sentence to account for petitioner's prior period of imprisonment. (ECF No. 13, Pet'r Reply at 1; *see* ECF No. 8–5, 9/16/2010 Tr. at 8–9.)

To the extent that petitioner is arguing that the sentencing court failed to follow the dictates of Section 5G1.3(b) when imposing petitioner's sentence, this issue is more appropriately resolved by the sentencing court pursuant to a motion under 28 U.S.C. § 2255 rather than this district court pursuant to a petition under 28 U.S.C. § 2241. *See Jackson v. Killian,* No. 08–CV–4386, 2009 WL 1835004, at *3 (S.D.N.Y. June 23, 2004) ("Challenging the sentencing court's section 5G1.3 calculation is 'more appropriately brought as an issue for the sentencing court pursuant to a motion under section 2255, rather than the district court in a section 2241 habeas petition where petitioner is held in custody.' " (quoting *Saunders v. Unnamed Warden,* No. 07–CV–4293, 2008 WL 2775763, at *7 (D.N.J. July 14, 2008) (denying habeas petition pursuant to 28 U.S.C. § 2241 where petitioner argued that he was entitled to a downward departure or sentence reduction under Section 5G1.3))). Accordingly, petitioner's Petition pursuant to 28 U.S.C. § 2241 is denied.

### III. Motion for Summary Judgment

Petitioner moves for summary judgment, asserting that he is entitled to the requested relief because "[i] t is a[n] irrefutable fact that the petitioner exhausted all the administrative remedies available." (ECF No. 15, Pet'r Mot. for Summary Judgment at 1.) Although the court finds that petitioner has exhausted the administrative remedies available to him, his

motion for summary judgment must nevertheless be denied because petitioner has received all the relief to which he is entitled pursuant to 18 U.S.C. § 3585(b) and his petition under 28 U.S.C. § 2241 has been denied as a matter of law.

## CONCLUSION

For the reasons set forth above, (i) petitioner's motion for a stay of transfer is denied; (ii) petitioner's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, is dismissed; and (iii) petitioner's motion for summary judgment is denied. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any

appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of the Court is respectfully requested to enter judgment accordingly, to close the case, and to serve a copy of this Memorandum and Order upon petitioner.

**\*12 SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4543712

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 1835004
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Thomas P. JACKSON, Petitioner,

v.

Janice M. KILLIAN, Warden: Federal Correctional
Institution, Otisville, New York Respondent.

No. 08 Civ. 4386(SAS).
|
June 23, 2009.

West KeySummary

1    **Habeas Corpus**  🗝 In general; completion of
     term
     Habeas corpus petition was denied as wholly
     without merit in proceeding in which inmate
     claimed that the federal sentencing court
     misconstrued the sentencing guidelines. The
     sentencing court correctly construed the
     sentencing guidelines because his state burglary
     crime was unrelated to his federal bank robbery
     crimes. There was no indication that the
     sentencing court considered the state burglary as
     "relevant conduct" or that the state burglary was
     the basis for an increase in his offense level. 28
     U.S.C.A. §§ 2241, 2255; U.S.S.G. § 5G1.3, 18
     U.S.C.A.

     4 Cases that cite this headnote

**Attorneys and Law Firms**

Thomas P. Jackson, Reg. # 59535-053, F.C.I. Otisville,
Otisville, NY, Petitioner (pro se).

Kristin L. Vassallo, Assistant United States Attorney, New
York, NY, for Respondent.

*OPINION AND ORDER*

SCHEINDLIN, J.

**I. INTRODUCTION**

**\*1**    Thomas P. Jackson, presently incarcerated and
proceeding pro se, brings this petition for a writ of habeas
corpus pursuant to section 2241 of Title 28 of the United
States Code ("section 2241"). Specifically, he claims that the
sentencing court misconstrued the Sentencing Guidelines and
that the Federal Bureau of Prisons ("BOP") miscalculated
his sentence credit.[1] For the reasons stated below, Jackson's
petition for a writ of habeas corpus is dismissed.

[1]    *See* Petition for Writ of Habeas Corpus, April 10,
       2008 ("Petition"), at 4, 5 (Introduction ¶¶ 15, 17).
       The Petition is cited by noting the page number
       followed by parentheses containing the section title
       and paragraph number. Exhibits to the Petition are
       neither paginated nor numbered.

**II. BACKGROUND**

**A. Offense Conduct**
On September 7, 2000, Jackson committed two bank
robberies in New York City.[2] On November 27, 2000,
Jackson committed an unrelated burglary.[3]

[2]    These crimes are codified in 18 U.S.C. § 2113(a).

[3]    *See* 8/14/08 Declaration of John A. Farrar,
       Federal BOP Policy and Correspondence Specialist
       ("Farrar Decl."), ¶ 4.

**B. Procedural History**
Jackson was arrested on the burglary charge by New York
State authorities on November 27, 2000.[4] On January 2,
2001, while Jackson was in state custody, he was "borrowed"
by federal authorities to appear on the two bank robbery
charges through a writ of habeas corpus ad prosequendum.[5]
On February 6, 2002, Jackson was sentenced by New
York State and returned to state custody to serve a term
of forty-two months to seven-years in prison.[6] The time
between November 27, 2000, when he was first detained, to
February 5, 2002, the day before his state sentence began,
was credited to both his state and federal sentences.[7] Both
credits amounted to 436 days. From February 6, 2002 to
April 2, 2004, Jackson was solely serving his state term
and received no credit toward his federal sentences. On

April 2, 2004, Jackson was sentenced on the federal bank robbery charges to 140 months in custody to be followed by three years of supervised release. [8] The state term expired on July 21, 2005, and the United States Marshals Service assumed custody of Jackson that same day. [9] Pursuant to the sentencing court's order and a subsequent BOP "nunc pro tunc" designation letter dated July 13, 2006, Jackson's federal term ran concurrently with his state term-that is, the time from April 2, 2004 (when his federal sentence was imposed) to July 21, 2005 (when his state sentence concluded) was applied toward both his state and federal sentences. [10] He is now incarcerated at FCI Otisville. [11] His federal term expires on September 21, 2014, but his scheduled release date is March 22, 2013. [12]

[4]    See id. ¶ 5.

[5]    See id. ¶ 6.

[6]    See id. ¶ 7.

[7]    See id. ¶ 14.

[8]    See id. ¶ 8. Jackson was found guilty of the federal crimes on April 4, 2003, almost exactly one year before his federal sentencing. See id.

[9]    See id. ¶ 10.

[10]   See id. ¶ 8. See also 7/13/06 BOP Memorandum, Ex. H to Farrar Decl.

[11]   See Farrar Decl. ¶ 2.

[12]   See id. ¶ 15. See also Sentence Monitoring Computation Data, January 14, 2007, attached to Petition (without pagination or exhibit numbers).

Jackson has brought several actions in various courts. On April 20, 2004, Jackson appealed his federal conviction to the Second Circuit Court of Appeals, which decided the matter on February 28, 2005. [13] On remand, the Eastern District of New York entered a second amended judgment on June 8, 2005. [14] On September 5, 2006, Jackson filed a section 2241 petition "challenging the accuracy of the BOP calculation." [15] On June 27, 2007, the Eastern District of New York dismissed Jackson's section 2241 petition for failing to exhaust administrative remedies and failing to name the proper respondent. [16] On March 16, 2007, Jackson filed a motion pursuant to section 2255 of Title

28 of the United States Code ("section 2255"), claiming that the sentencing Court " 'lacked both in [sic] personam and subject matter jurisdiction to try or charge or to convict petitioner' because the Prison Litigation Reform Act and the Antiterrorism Effective Death Penalty Act are unconstitutional mandates." [17] On July 3, 2007, the Eastern District of New York dismissed Jackson's section 2255 motion as untimely. [18] Following is a summary of important dates:

[13]   See United States v. Jackson, 126 Fed. App'x 5 (2d Cir.2005) ("Jackson I") (affirming the sentencing court's jury instructions but remanding to conform Jackson's sentencing with a recent Supreme Court case).

[14]   See Jackson v. Apker, No. 07 Civ. 1324, 2007 WL 1987762, at *1 (E.D.N.Y. July 3, 2007) ("Jackson III") (describing the procedural history following Jackson's conviction and sentencing, including the second amended judgment). Jackson did not seek additional review of the second amended judgment. See id. On June 1, 2004, the sentencing court issued a first amendment-specifically, a change to the judgment's "Statement of Reasons." See id.

[15]   Jackson v. United States, No. 06 Civ. 4863, 2007 WL 1875567, at *1 (E.D.N.Y. June 27, 2007) ("Jackson II").

[16]   See id., at *3.

[17]   Jackson III, 2007 WL 1987762, at *1 (citation omitted). The first section 2255 motion was filed on March 16, 2007 with a subsequent section 2255 motion filed on June 20, 2007. The court construed the June 20, 2007 motion as amending the March 16, 2007 motion. See id.

[18]   See id. at *3.

- September 7, 2000:          Federal crimes committed.
- November 27, 2000:          Arrested by New York State for unrelated crime. Held in state custody.
- January 2, 2001:           "Borrowed" by federal authorities. Moved to federal custody.

| | | |
|---|---|---|
| • | February 6, 2002: | Sentenced by New York State. Moved to state custody to serve state sentence. |
| • | April 2, 2004: | Sentenced by Eastern District of New York. Even though Jackson remained in state custody, his federal sentence was designated, nunc pro tunc, to run concurrently with his state sentence from this point onward. |
| • | June 8, 2005: | Entry of amended federal judgment. |
| • | July 21, 2005: | State sentence expired. |
| • | September 29, 2005: | Transferred to federal prison to serve out remainder of federal sentence. [19] |
| • | March 22, 2013: | Scheduled release from federal sentence. |
| • | September 21, 2014: | Expiration of federal sentence. |

**\*2** Jackson exhausted his administrative remedies and now brings a writ of habeas corpus, pursuant to section 2241, claiming that his sentence should be reduced from 140 months to 99 months. [20] Specifically, Jackson claims that the federal sentencing court misconstrued the Sentencing Guidelines and that the BOP miscalculated the amount of credit that should be applied toward his federal sentence. [21]

[20]    *See id.* at 4-7 (Introduction ¶¶ 15-19).

[21]    *See id.* Throughout his Petition and Reply, Jackson makes various claims as to why his sentence should be reduced. For example, Jackson claims he is entitled to credit for all of his presentence incarceration. *See* 8/26/08 Jackson's Reply ("Reply") ¶ 9. However, it is not clear whether he is referring to the period of incarceration prior to his state sentence (which was credited) or the period of incarceration prior to his federal sentence (some of which was credited). At another point, Jackson asks for credit for the time period between January 2, 2001 (when the Federal

Marshals took custody of him) to September 29, 2005 (when he arrived at a federal correctional institution after his state sentence ended). *See* Petition at 12 (Issues Raised ¶ 2).

### III. LEGAL STANDARD

A. 28 U.S.C. § 2241

"Writs of habeas corpus may be granted by ... the district courts ... within their respective jurisdictions." [22] "A motion pursuant to [section] 2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole [and] computation of a prisoner's sentence by prison officials." [23]

[22]    28 U.S.C. § 2241(a).

[23]    *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir.2001) (emphasis in original).

B. 28 U.S.C. § 2255

"In contrast [to a section 2241 motion, section] 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence, as it encompasses claims that '... the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.' " [24] Despite the well-defined distinction between the two sections, claims that fall within section 2255 (*i.e.*, claims that attack the imposition of the sentence, not the execution of the sentence) can be raised under a section 2241 motion "in very limited circumstances." [25]

[24]    *Id.* (quoting 28 U.S.C. § 2255(a)).

[25]    *Poindexter v. Nash,* 333 F.3d 372, 378 (2d Cir.2003).

These circumstances-exceptions to the rule-allow for a federal prisoner to collaterally attack a conviction under section 2241 if that prisoner can show that a section 2255 motion would be "inadequate or ineffective to test the legality of his detention." [26] A section 2255 motion "may be inadequate or ineffective in circumstances in which 'the petitioner cannot, for whatever reason, utilize [section] 2255, and in which the failure to allow for collateral review would raise serious constitutional questions.' " [27] The Second Circuit has recognized only one circumstance where such a section 2255 motion is inadequate or ineffective: cases in which inmates

"(1) can prove 'actual innocence on the existing record,' and (2) 'could not have effectively raised [their] claim[s] of innocence at an earlier time.' " [28] On the other hand, a section 2255 motion "is *not* considered inadequate or ineffective merely because the gate keeping provision of the statute prevents a movant from raising a claim that he or she could have raised on direct review or in an earlier section 2255 motion." [29]

[26]  *Jiminian,* 245 F.3d at 147 (citing 28 U.S.C. § 2255(e)).

[27]  *Id.* (quoting *Triestman v. United States,* 124 F.3d 361, 377 (2d Cir.1997)).

[28]  *Cephas v. Nash,* 328 F.3d 98, 104 (2d Cir.2003) (quoting *Triestman,* 124 F.3d at 363).

[29]  *Bellomo v. United States,* 344 F.Supp.2d 429, 434 (S.D.N.Y.2004) (emphasis added and citations omitted). "As amended by the [Antiterrorism and Effective Death Penalty Act], [section] 2255 includes a gate-keeping provision that limits the filing of second or successive [section] 2255 motions." *Jiminian,* 245 F.3d at 146.

A request for relief pursuant to a section 2255 claim is generally subject to a one year statute of limitations, starting from "the date on which the judgment of conviction becomes final ... or the date on which facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." [30] "[A petitioner] cannot ... resort to [section] 2241 merely to save his now untimely [section] 2255] claim." [31]

[30]  28 U.S.C. § 2255(f)(1), (4). The other scenarios that toll the statute of limitations are not relevant here.

[31]  *Medrano v. Craig,* No. 9:05 Civ. 1422, 2006 WL 219820, at *2 (N.D.N.Y. Jan.27, 2006).

### C. U.S.S.G. § 5G1.3

**\*3**  Section 5G1.3(b) of the United States Sentencing Guidelines ("section 5G1.3") states as follows:

> If ... a term of imprisonment resulted from another offense that is relevant

conduct to the instant offense of conviction ... and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows: (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment. [32]

[32]  U.S.S.G. § 5G1.3(b).

"[I]t would be inappropriate to apply [section] 5G1.3(b) ... [to a defendant's] convictions [that] arose from two completely unrelated offenses." [33] Challenging the sentencing court's section 5G1.3 calculation is "more appropriate[ly brought as an issue] for the sentencing court pursuant to a motion under [section] 2255, rather than th[e] district court in a [section] 2241 habeas petition where petitioner is held in custody." [34]

[33]  *Rosario v. United States,* No. 02 Civ. 3360, 2004 WL 439386, at *6 (S.D.N.Y. Mar.9, 2004) ("where[ ] Rosario's convictions stem[ ] from unrelated criminal conduct, ... [section] 5G1.3(b) [is rendered] inapposite.").

[34]  *Saunders v. Unnamed Warden,* No. 07 Civ. 4293, 2008 WL 2775763, at *7 (D.N.J. July 14, 2008).

### D. 18 U.S.C. § 3585(b)

"The Attorney General, through the [BOP], has responsibility for imprisoning federal offenders." [35] "A defendant who is dissatisfied with the Attorney General's determination [of credit] must raise his challenge with the BOP, by following a complex administrative process." [36] "The defendant may

seek judicial review of the Attorney General's computation once he has exhausted all administrative remedies." [37]

35  *United States v. Wilson,* 503 U.S. 329, 331, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).

36  *Grant v. United States,* No. 5:93 Cr. 80, 2007 WL 2225809, at *1 (M.D.Ga. Jul.31, 2007). *See also* 28 C.F.R. §§ 542.10 to 542.19 (2006) (detailing the steps for obtaining administrative review).

37  *United States v. Wilson,* 997 F.2d 208, 209 (6th Cir.1993).

"Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody." [38] With respect to the first determination, the earliest date that a sentence can commence is the date the sentence is imposed. [39] A federal sentence can run concurrently to a state sentence if a portion of the state sentence remains undischarged when the federal sentence is imposed. [40] Section 3585(b) of Title 18 of the United States Code ("section 3585") dictates the second consideration-grants of credit. Section 3585 calls for the BOP to credit any time spent in official detention prior to the sentencing date "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence."* [41] "Prior custody credits shall be given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that the first sentence begins to run, federal or non-federal." [42] "If, for example, a state defendant is denied bail solely because of a federal detainer issued against him, the time spent in state custody awaiting trial must be credited to his federal sentence." [43]

38  *United States v. Smith,* 812 F.Supp. 368, 370 (E.D.N.Y.1993).

39  *See, e.g., Hickman v. United States,* No. 05 Civ. 1842, 2006 WL 20489, at *3 (S.D.N.Y. Jan. 4, 2006) (noting that the date of the Judgment and Sentencing Order marks the earliest day that the defendant's sentence could commence). *Accord* BOP Program Statement 5880.28, Sentence

Computation Manual (CCCA of 1984) ("BOP Prog. Stat."), excerpts attached as Exhibit F to Farrar Decl., at 4 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). *See also Smith,* 812 F.Supp. at 370 ("When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the [BOP] agrees to designate the state facility for service of the federal sentence.").

40  *See, e.g., Fermin v. United States,* 252 F.3d 102, 109 (2d Cir.2001) (allowing a federal sentence to run concurrently only with the undischarged portion of the defendant's pre-existing state sentence).

41  18 U.S.C.A. § 3585(b) (emphasis added). *Accord United States v. Labeille-Soto,* 163 F.3d 93, 99 (2d Cir.1998) ("[A] defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence.").

42  BOP Prog. Stat. at 10. These time credits are also known as *Willis* time credits, from *Willis v. United States,* 438 F.2d 923 (5th Cir.1971). *Accord Rivera v. Killian,* No. 08 Civ. 405, 2008 WL 1990093, at *3 (S.D.N.Y. May 8, 2008) ("[T]ime spent by a defendant in state custody solely as the result of actions of the federal government-such as the lodging of a federal detainer that prevented the defendant from being released on bail in the state case-should be credited to his federal sentence.").

43  *Shaw v. Smith,* 680 F.2d 1104, 1106 (5th Cir.1982) (citation omitted).

**\*4**  "[C]redit is granted by the Attorney General through the [BOP] after a defendant is sentenced, and although the defendant may, after exhausting his administrative remedies, obtain judicial review of that Bureau's determination, the credit is not [to be granted] by a district court at the time of sentencing." [44] A determination by the district court to grant credit to a defendant "exceed[s] the court's authority as a matter of law." [45]

44  *Labeille-Soto,* 163 F.3d at 99 (citations omitted).

45  *Id.* at 100.

## IV. DISCUSSION

Jackson first claims that the sentencing court erred in failing to adhere to the requirements of section 5G1.3 of the Sentencing Guidelines. Respondent counters that Jackson cannot bring a section 2241 motion to attack the imposition, not the execution, of his sentence. Jackson next claims that the BOP miscalculated his federal sentence and asks this Court to compel the BOP to correct it. Respondent counters that the BOP correctly calculated Jackson's sentence.

A. Jackson's Section 5G1.3 Claim Fails for Several Reasons

1. This Claim Must Be Brought Pursuant to Section 2255

Jackson's claim that the sentencing court failed to follow the dictates of section 5G1.3 must be brought under 2255 because he is attacking the imposition, not the execution, of the sentence. However, because Jackson is proceeding pro se, his petition "is to be liberally construed in his favor" and this Court will assume that he filed this part of his claim pursuant to section 2255. [46]

[46]    Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir.1995) (citing Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

2. Jackson's Section 2255 Petition Is Time-Barred

Jackson's second amended judgment was entered on June 8, 2005. [47] The instant Petition is dated April 10, 2008. Jackson has not alleged that he discovered any new facts after he filed his first section 2255 motion. Jackson's prior section 2255 motion was dismissed as time-barred. [48] It follows that the instant motion is also time-barred.

[47]    Because Jackson had ten days from June 8, 2005 to file a notice of appeal on this judgment, the amended judgment became final on or about June 22, 2005.

[48]    See Jackson III, 2007 WL 1987762, at *2. Because that court had entered a second amended judgment on June 8, 2005, Jackson's "conviction became final for the purpose of filing a [section] 2255 petition on June 22, 2005, the last date upon which he was could file a notice of appeal of this Court's second amended judgment." Id. The court then noted that even if it had used the date the Second

Circuit entered judgment on the appeal-February 28, 2005-the claim also would have been time-barred because the conviction would have been "final on May 30, 2005, 90 days after the date on which the judgment was entered." Id. Using these dates, this Court must dismiss Jackson's instant petition as untimely-this petition is dated almost three years after his conviction became final.

Respondent claims that this Petition requires the approval of the Second Circuit because Jackson has filed a previous section 2255 motion. However, Jackson's prior section 2255 motion was not dismissed on the merits. In Jiminian v. Nash, the Second Circuit held that it was proper for the district court to send a successive section 2241 petition that contained a section 2255 claim for approval when the petitioner's previous section 2255 motion was dismissed on the merits. [49] Jiminian, however, did not address a prior section 2255 motion that was procedurally barred. In Medrano v. Craig, the district court did not transfer a section 2241 petition, which masked an untimely section 2255 claim, to the Second Circuit for review because the previous section 2255 motion was dismissed as time-barred. [50] I will follow this practice and decide the claims in the pending Petition. [51]

[49]    See Jiminian, 245 F.3d at 148 ("[W]e also hold that when presented with a [section] 2241 petition raising previously available claims appropriately the subject of a [section] 2255 motion, district courts should construe the petition as a second or successive [section] 2255 motion and transfer it to this Court for certification, so long as the prisoner had a prior [section] 2255 motion dismissed on the merits." ) (emphasis added).

[50]    Some courts have held that a procedurally-barred section 2255 claim is not a "first" section 2255 motion. See, e.g., Douglas v. Workman, 560 F.3d 1156, 1189 (10th Cir.2009) (refusing to count a section 2255 motion as a successive claim when the first section 2255 motion was procedurally barred).

[51]    See Tyson v. Jeffers, 115 Fed. App'x 34, 37 (10th Cir.2004) (upon determining that Tyson's section 2241 claim was more properly a section 2255 claim, the Tenth Circuit affirmed the District Court's dismissal because "Tyson has now forfeited such a [section] 2255 challenge in any event, since

the one-year statute of limitations on [section] 2255 petitions has run").

3. Jackson's Section 5G1.3 Claim Is Without Merit

Even if Jackson's section 2255 claim is not time-barred, is not successive, and is properly brought before this Court, it still fails because it is wholly without merit. The sentencing court correctly construed section 5G1.3 because his state burglary crime was unrelated to his federal bank robbery crimes. There is no indication that the sentencing court considered the state burglary as "relevant conduct" or that the state burglary was the basis for an increase in his offense level. Thus, the sentencing court correctly recognized that section 5G1.3 did not apply to Jackson's federal sentence.

B. Section 3585(b) Sentence Calculation Was Correct

**\*5**  Jackson's section 2241 claim is that BOP miscalculated his sentence by failing to give him all of the credit to which he was entitled. This claim is also meritless. The BOP correctly determined that Jackson should receive credit from the time he was detained-November 27, 2000-to the time his state sentence started-February 5, 2002. Those 436 days were correctly counted as *Willis* time credit on his federal sentence. The time between February 6, 2002 and April 2, 2004 was not credited because his federal sentence had not yet commenced-instead, Jackson was serving his state sentence.[52] Finally, the time from April 2, 2004-the day Jackson's federal sentence commenced-until July 21, 2005-the day he was released from state custody-was spent concurrently serving both the state and federal sentences.

[52]   The respondent cites a host of cases that compel this conclusion. *See, e.g., Werber v. United States,* 149 F.3d 172 (2d Cir.1998) (holding that petitioner is not entitled to credit for time already credited toward state sentence); *United States v. Wusebio,* No. 04 Cr. 607, 2007 WL 582745, at \*3 (S.D.N.Y. Feb.21, 2007) (denying credit for time spent pursuant to a writ of habeas corpus ad prosequendum).

Jackson's federal sentence of 140 months, imposed on April 2, 2004, would have placed him in prison until December 2015. Subtracting the 436 days of credit that he correctly received, his maximum sentence is now mid-September, 2014. These are the dates that the BOP imposed. No adjustment to Jackson's sentence is warranted.

C. Certificate of Appealability

A district court may grant a certificate of appealability allowing a habeas petitioner to appeal the denial of his petition with respect to any of petitioner's claims only if petitioner makes a substantial showing of the denial of a constitutional right.[53] A substantial showing requires only that a petitioner demonstrate that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further .'"[54] Because Jackson has not made such a showing, I decline to issue a certificate of appealability.

[53]   *See* 28 U.S.C. § 2253(c)(2). *See also Miller-El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

[54]   *Rhagi v. Artuz,* 309 F.3d 103, 106 (2d Cir.2002) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (quotation marks and citation omitted)).

V. CONCLUSION

For the foregoing reasons, Jackson's petition for a writ of habeas corpus is denied. The Clerk of the Court is directed to close this motion (Docket # 1) and this case.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 1835004

**Footnotes**

19   FN19. *See* Petition at 10 (Statement of Facts ¶ G). Even though Jackson's state sentence expired on July 21, 2005, it took two months to transfer him to a federal correctional institution.

2009 WL 1835004

---

**End of Document**                                      © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 2775763
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

Rodney SAUNDERS, Petitioner,
v.
UNNAMED WARDEN, et al., Respondents.

Civil No. 07–4293 (RBK).
|
July 14, 2008.

**Attorneys and Law Firms**

Rodney Saunders, Washington, DC, pro se.

Christopher J. Christie, United States Attorney, Daniel J. Gibbons, Assistant U.S. Attorney, Newark, NJ, for Respondents.

**OPINION**

KUGLER, District Judge.

**\*1** Petitioner, Rodney Saunders ("Saunders"), is a federal prisoner. He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking credit for the time he was held in federal custody pursuant to a writ of habeas corpus ad prosequendum. The named respondents are the unnamed Warden of the federal correctional facility where petitioner is confined, and Clay Shell, the Assistant Administrative Director of the Inmate Monitoring System.

On April 28, 2008, respondents submitted a response to the petition with the relevant administrative record. Petitioner has not filed any objections or traverse. Accordingly, this Court has reviewed the written submissions of the parties, and for the reasons stated below, the Court will deny the petition.

**I. BACKGROUND**

On May 7, 2001, Saunders was convicted and sentenced to 21 to 42 months imprisonment by the Commonwealth of Pennsylvania on drug charges. One year later, on May 15, 2002, federal authorities assumed physical custody of Saunders pursuant to a writ of habeas corpus ad prosequendum. On May 16, 2003, Saunders pled guilty to the federal charges. He was sentenced on June 18, 2004, in the United States District Court for the Eastern District of Pennsylvania, to a 30–month prison term on federal drug offenses unrelated to petitioner's state court conviction. Saunders also was sentenced to a consecutive 30–month prison term, pursuant to 18 U.S.C. § 924(C)(1), on his conviction for using and carrying a firearm in relation to a drug trafficking crime, for a total federal sentence of 60 months in prison. Saunders' projected release date is March 16, 2009.

After his federal sentencing hearing, Saunders was returned to state custody on June 30, 2004. On November 8, 2004, Saunders was released from state custody to a federal detainer. He began serving his federal sentence on November 8, 2004. The Federal Bureau of Prisons ("BOP") granted Saunders one day of jail credit, November 15, 2000, because it had not been credited against his state sentence.

Saunders requested prior custody credit for the time he spent serving his state sentence, or a "nunc pro tunc" designation. In a letter dated January 27, 2005, the BOP Regional Inmate Systems Administrator denied Saunders' request for a nunc pro tunc designation, finding that:

> You were sentenced on June 18, 2004, in the Eastern District of Pennsylvania, on case # CR 02–250–1, to a term of 60 months. At the time of sentencing, the Judge was silent as to how the federal sentence would run in relation to the sentence you were serving for the State of Pennsylvania. The Bureau interpreted your judgment as consecutive and began your federal sentence effective November 8, 2004, when you were paroled by the state to the federal detainer.

> Under Bureau policy, a designation for concurrent service of sentence should be made only when it is consistent with the intent of the sentencing court or the goals of the criminal justice system.

**\*2** (Respondents' Declaration of John A. Farrar ("Farrar Decl.", ¶ 7 and Exhibit e).

Petitioner then sought a clarification of his sentence from the sentencing court. On October 19, 2006, the federal sentencing court clarified the sentence imposed on June 18, 2004, stating it was the court's intent for the federal sentence to be consecutive to his state sentence. The court further noted that

Saunders had been granted a considerable departure from the federal sentencing guidelines. (Farrar Decl. at ¶ 8 and Ex. f).

Respondent does not dispute that petitioner exhausted his administrative remedies before filing this habeas petition.

## II. *CLAIMS PRESENTED*

Petitioner presents three claims in support of habeas relief:

Claim One: The BOP must credit petitioner's federal sentence 21 months, from February 7, 2003 to November 7, 2004, because the federal writ of habeas corpus ad prosequendum prevented petitioner from being considered and released for state parole. Saunders states that he became eligible for state parole on or about February 7, 2003, but was held in federal custody from May 12, 2002 through June 30, 2004, when he was returned to state custody to serve out the remainder of his state sentence. Petitioner was compelled to serve his maximum term, or the remaining 129 days on his state sentence, because the state administrative parole process takes approximately 120 days to complete. Saunders relies on *Rosemond v. Menifee,* 137 F.Supp.2d 270 (S.D.N.Y.2000), in support of this claim.

Claim Two: Petitioner contends that the BOP should have credited his federal sentence for the time he spent in federal detention on a writ of habeas corpus ad prosequendum, from May 12, 2002 through June 30, 2004, because the sentencing transcript indicates that the federal sentencing court intended to impose an "adjusted" federal sentence under the United States Sentencing Guidelines ("USSG") § 5G1.3(c) to achieve a reasonable sentence.

Claim Three: Finally, Saunders contends that if this Court finds no intent by the sentencing court to "adjust" petitioner's federal sentence, then the Court should find that the federal "sentencing court failed to consider Saunders' undischarged state sentence and USSG § 5G1.3 as bearing on punishment imposed, which constitutes plain error."

The respondents oppose the petition, countering that federal custody did not commence until the state authorities relinquished Saunders on satisfaction of his state sentence on November 8, 2004. The Government argues that Saunders is not eligible to receive prior custody credit towards his federal sentence for the time he served on the writ of habeas corpus ad prosequendum because that would constitute double credit

contrary to the intent of Congress under 18 U.S.C. § 3585(b). Furthermore, the Government contends that petitioner's claim that he might have been released on state parole if he had remained in the physical custody of the state is too speculative to outweigh the prohibition against double credit under 18 U.S.C. § 3585(b). Finally, the Government argues that the federal sentencing court clearly stated its intent that petitioner's federal sentence should run consecutive to his state sentence because petitioner already had been given a substantial reduction in his federal sentence.

## III. *ANALYSIS*

**\*3** The Court recognizes that a *pro se* pleading is held to less stringent standards than more formal pleadings drafted by attorneys. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Haines v. Kerner,* 404 U.S. 519, 520 (1972). Thus, a *pro se* habeas petition should be construed liberally and with a measure of tolerance. *See Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir.1998); *Lewis v. Attorney General,* 878 F.2d 714, 721–22 (3d Cir.1989). Because Saunders is proceeding *pro se* in his application for habeas relief, the Court will accord his petition the liberal construction intended for *pro se* litigants.

### A. Jurisdiction

Section 2241 of Title 28 of the United States Code provides in relevant part:

> (c) The writ of habeas corpus shall not extend to a prisoner unless—... He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(a), (c)(3).

"Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." *Coady v. Vaughn,* 251 F.3d 480, 485–486 (3d Cir.2001). A petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the district where the prisoner is confined provides a remedy "where petitioner challenges the effects of events 'subsequent' to his sentence." *Gomori v. Arnold,* 533 F.2d 871, 874 (3d Cir.1976) (challenging erroneous computation

of release date). *See also Soyka v. Alldredge,* 481 F.2d 303 (3d Cir.1973) (where petitioner alleged a claim for credit for time served prior to federal sentencing).

Moreover, if the BOP erred in calculating Saunders' sentence by not applying prior custody credit for the time he spent in federal detention on the writ of habeas corpus ad prosequendum, then Saunders would be entitled to immediate release from prison, and his continued confinement would constitute a miscarriage of justice that can be corrected only through habeas corpus. *Murray v. Carrier,* 477 U.S. 478, 495 (1986); *Barden v. Keohane,* 921 F.2d 476 (3d Cir.1991).

Accordingly, this Court has subject matter jurisdiction under § 2241 to consider this matter since Saunders does not challenge the imposition of the sentence, but instead challenges the execution of the sentence based on the BOP's alleged error in not giving him credit against his federal sentence for the full time served in state custody, and because he was confined in New Jersey at the time he filed his petition. *See Vega v. United States,* 493 F.3d 310, 313 (3d Cir.2007) (challenge to BOP's failure to give credit for time served prior to federal sentencing is cognizable under § 2241); *See Barden v. Keohane,* 921 F.2d at 478–79 (challenge to BOP's refusal to decide whether to designate state prison as a place of federal confinement); 2 James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 41.2b (3rd ed.1998).

**B. Computation of Federal Sentence**

 **\*4** The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, *see* 18 U.S.C. § 3585; *United States v. Wilson,* 503 U.S. 329 (1992), and has delegated that authority to the Director of the Bureau of Prisons under 28 C.F.R. § 0.96 (1992). *See United States v. Brann,* 990 F.2d 98, 103–04 (3d Cir.1993).

Computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination: first, the date on which the federal sentence commences and, second, the extent to which credit may be awarded for time spent in custody prior to commencement of the sentence ("prior custody credit").

 (a) Commencement of sentence.—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives

voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

 (b) Credit for prior custody.—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

> (1) as a result of the offense for which the sentence was imposed; or

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585(a), (b).

There are three ways that an inmate can accrue federal jail credit: (1) credit for time spent in custody while actually serving a federal sentence; (2) credit for prior custody under 18 U.S.C. § 3585(b); and (3) credit for time spent in non-federal pre-sentence custody during which the inmate is denied bail because of a federal detainer, commonly referred to as *"Willis" credit. See Willis v. United States,* 438 F.2d 923 (5th Cir.1971).

Section 3585(b) allows an inmate to use time served in custody prior to the imposition of a sentence towards the completion of that sentence when the custody was "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence." This last clause provides that time spent in custody cannot be credited toward a federal sentence if it was used to satisfy a non-federal sentence. The Supreme Court has made clear that inmates are not allowed to "double count" credit. *See United States v. Wilson,* 503 U.S. 329 (1992).

While § 3585(b) governs calculation of a sentence by the BOP, § 3584 gives the federal sentencing court the power to impose a sentence that runs concurrent to a state sentence. Section 3584 provides:

 (a) Imposition of concurrent or consecutive term.—If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run

concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

**\*5** (b) Factors to be considered in imposing concurrent or consecutive terms.—The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

(c) Treatment of multiple sentence as an aggregate. —Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment.

18 U.S.C. § 3584; *see also Ruggiano v. Reish,* 307 F.3d 121, 132 (3d Cir.2002) (sentencing court has authority under 18 U.S.C. § 3584 and United States Sentencing Guidelines § 5G1.3(c) to order a federal sentence to be fully and retroactively concurrent to a state sentence the defendant was already serving).

Also relevant to this petition is the concept of "primary jurisdiction." When two different sovereigns have custody of a criminal defendant over time, the general rule is that the sovereign who first acquires custody has primary jurisdiction over the defendant. *Chambers v. Holland,* 920 F.Supp. 618, 622 (M.D.Pa.), *aff'd,* 100 F.3d 946 (3d Cir.1996). Primary jurisdiction remains vested in the jurisdiction which first arrested defendant until that jurisdiction relinquishes its priority by bail release, dismissal of state charges, parole release, or expiration of sentence. *Id.*

## C. The Commonwealth of Pennsylvania Retained Primary Jurisdiction Over Petitioner During the Time Petitioner Was in Federal Custody.

Generally, as referenced above, the sovereign which first arrests an individual acquires primary jurisdiction for purposes of trial, sentencing, and incarceration. The arresting sovereign retains primary jurisdiction unless it relinquishes it by (1) releasing the prisoner on bail; (2) dismissing the

charges; (3) releasing the prisoner on parole; or (4) the expiration of the sentence. *U.S. v. Cole,* 416 F.3d 894, 897 (8th Cir.2005); *Chambers,* 920 F.Supp. at 622. A sovereign does not relinquish authority by producing a state prisoner for sentencing in a federal court via a writ of habeas corpus *ad prosequendum. See Cole,* 416 F.3d at 896–897; *Thomas v. Brewer,* 923 F.2d 1361, 1365 (9th Cir.1991); *Chambers,* 920 F.Supp. at 622.

In this case, Saunders argues that the federal government had assumed primary jurisdiction over him while he was in federal detention pursuant to a federal writ of habeas corpus ad prosequendum, and therefore, the relevant time period between May 12, 2002 through June 30, 2004 should count towards service of his federal sentence.

However, Saunders shows no evidence that Pennsylvania state authorities relinquished its primary jurisdiction over petitioner when he was loaned to federal authorities pursuant to the writ of habeas corpus ad prosequendum. At the time Saunders was placed in federal detention, he was serving a state sentence, which had not yet expired, and Saunders had not been released on parole. In fact, Saunders was returned to the custody of Pennsylvania state authorities on June 30, 2004, so that he could complete his state sentence before serving his unrelated federal sentence. Consequently, Saunders remained under the primary jurisdiction of the state of Pennsylvania until he was released by state authorities on November 7, 2004, after petitioner had completed service of his state sentence. *See Rios v. Wiley,* 201 F.3d 257, 274–76 (3d Cir.2000). [1] Primary jurisdiction did not revert to the United States until Saunders was transferred to the BOP for service of his federal sentence on or about November 7, 2004. [2] *See Del Guzzi v. United States,* 980 F.2d 1269 (9th Cir.1992).

[1]      *Rios* was superseded by statute on unrelated grounds to the extent that the court applied a version of the United States Sentencing Guidelines § 5G1.3 prior to its amendment, effective November 1, 1995. *See United States v. Saintville,* 218 F.3d 246, 247 (3d Cir.2000).

[2]      Title 18 of the United States Code, section 3585(a) states:
        A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence

at, the official detention facility at which the sentence is to be served.

### D. Prior Custody Credit

**\*6** Saunders' primary claim is that the BOP erred in refusing to award him prior custody credit for the period of time from May 12, 2002 through June 30, 2004, when petitioner was placed in federal detention pursuant to the habeas ad prosequendum. The BOP argues that Saunders is entitled to prior custody credit only if it is in accord with 18 U.S.C. § 3585(b). Specifically, respondents contend that an award of prior custody credit for the time period in question is prohibited because it would be a double credit contrary to the provisions of 18 U.S.C. § 3585(b).

The Supreme Court expressly noted that, under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." *United States v. Wilson,* 503 U.S. 329, 337 (1992); *see also Rios v. Wiley,* 201 F.3d at 274. This ban on double credits also applies to those situations where the petitioner is in federal detention under a writ of habeas corpus *ad prosequendum* during the time for which presentence credits are sought. *Rios v. Wiley, supra.* Thus, respondents correctly argue that Saunders is not entitled to prior custody credits for the time he spent in federal detention because it would constitute double credit contrary to 18 U.S.C. § 3585(b). [3]

[3]    Saunders' federal and state offenses are unrelated, so § 3585(b)(2) is applicable in this case. Consequently, prior custody credit may be granted for the time Saunders spent in official detention for which he did not receive credit towards another sentence, and this detention must have occurred on or after the date of the federal offense. In other words, because Saunders received credit for the time he spent in federal detention pursuant to the habeas ad prosequendum towards his state sentence, any credit towards his federal sentence for this same time period would be double credit prohibited by 18 U.S.C. § 3585(b)(2).

Here, the time Saunders spent in federal detention, from May 12, 2002 to June 30, 2004, was credited towards his Pennsylvania state sentence. Therefore, this Court finds that Saunders is not entitled to credit his federal sentence with time already credited against his non-federal sentence. *See Wilson,* 503 U.S. at 337; *Rios v. Wiley,* 210 F.3d at 274. *See also* 18 U.S.C. § 3585(b).

### E. *Rosemond v. Menifee* Is Not Applicable Here

Saunders argues that he should be granted credit for the time he spent in federal detention on the writ of habeas corpus ad prosequendum because, had he not been in federal detention, he would have been released on state parole. Petitioner relies on *Rosemond v. Menifee,* 137 F.Supp.2d 270 (S.D.N.Y.2000) to support this contention. Respondents counter that Saunders' claim that he would have been released on parole is too speculative to outweigh the prohibition against double credit under 18 U.S.C. § 3585(b).

In *Rosemond,* the court held that due process and fundamental fairness required the BOP to credit petitioner towards his federal sentence for the 87 days he spent in federal detention pursuant to a writ of habeas corpus ad prosequendum. The court specifically observed that petitioner was scheduled for conditional release from state custody two days after he was taken into custody on the federal writ of habeas corpus ad prosequendum on April 1, 1999. When petitioner was returned to state custody on June 26, 1999, he was released by the state two days later, "which is strong evidence that the State of New York would have released petitioner on April 3, 1999 but for the fact that he was in federal custody pursuant to the federal writ." The court further noted that "New York State authorities lacked the legal authority to credit petitioner for the two days remaining on his state sentence which were spent in federal custody." Accordingly, the court concluded that "to deny petitioner credit toward his federal sentence- for time that was not credited toward his state sentence which was lengthened solely by the actions of the federal authorities-would represent a manifest injustice." *Rosemond,* 137 F.Supp.2d at 275.

**\*7** Similarly, in *United States v. Anderson,* 98 F.Supp.2d 643 (E .D. Pa.2000), the United States District Court for the Eastern District of Pennsylvania found that the defendant was entitled to a downward departure reflecting the time he spent in federal custody following the grant of parole in his state case since, in the absence of a departure, defendant would have been "subjected to an additional seven months on a state sentence that was, in all but the most technical sense, complete, without receiving any credit towards his federal sentence." *Id.* at 646.

While this Court is guided by the *Anderson* and *Rosemond* cases, the different circumstances in the instant matter mandate a different result. First, Saunders does not show that he had a date set for conditional release or parole or that he

was granted state parole at any time after he was taken into federal custody pursuant to the federal writ. His argument that he would have had a date set for parole is purely speculative, and not supported by the record. Namely, after Saunders was returned to state custody on June 30, 2004, he remained in state custody for the remainder of his sentence, which was at least six months. Thus, Saunders was credited towards his state sentence for the entire time he spent in federal custody. His state sentence was not lengthened by virtue of the time he spent in federal custody, and there is no indication that his state sentence was considered complete at any time before he was returned to state custody and for six months thereafter.

Second, in this case, Saunders' federal sentence was made to run consecutive to his state sentence, not concurrently, as was the situation in *Anderson,* where petitioner was granted a downward departure.

Therefore, this Court finds that *Rosemond* and *Anderson* are inapplicable here, and Saunders is not entitled to credit towards his federal sentence for the time he spent in federal detention pursuant to the writ of habeas corpus ad prosequendum because that time was credited towards service of his state sentence, and would clearly violate 18 U.S.C. § 3585(b)(2).

### F. Saunders Is Not Entitled to Sentence Reduction Under USSG § 5G1.3.

Finally, Saunders argues that he is entitled to a downward departure or sentence reduction under USSG § 5G1.3(c). [4] This section allows a federal court to award a concurrent sentence in a manner that would require the BOP to give credit for the time petitioner spent in federal detention even though that time already was credited toward service of his non-federal sentence. However, this issue is more appropriate for the sentencing court pursuant to a motion under 28 U.S.C. § 2255, rather than this district court in a § 2241 habeas petition where petitioner is held in custody. *See United States v. Pierce,* 120 F.3d 263 (4th Cir.1997).

[4]    A federal court's authority to order that terms of imprisonment imposed at different times shall run concurrently is limited to cases in which the federal term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment. 18 U.S.C. § 3584(a). Under U.S.S.G. § 5G1.3(c), the court may impose a sentence "to run concurrently,

partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). Further, under U.S.S.G. § 5G1.3(b), a concurrent sentence is mandatory and shall be imposed to run concurrently to an undischarged sentence when "the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense." U.S.S.G. § 5G1.3(b).

Saunders refers to *Rios v. Wiley,* 201 F.3d 257 (3d Cir.2000) and *Ruggiano v. Reish,* 307 F.3d 121 (3d Cir.2002) in making his claim that a downward departure is appropriate under USSG § 5G1.3. This Court finds these cases inapplicable here.

*8 In *Ruggiano v. Reish,* the United States Court of Appeals for the Third Circuit held that in imposing a sentence, a district court may grant an adjustment for time served on a preexisting sentence pursuant to U.S.S.G. § 5G1.3(c). [5] Under *Ruggiano,* a sentencing court may exercise this option to grant an adjustment under § 5G1.3(c) by making the federal sentence concurrent with the state sentence for the full period of the preexisting sentence (retroactively concurrent) or only concurrent for the remainder of the preexisting sentence from the date when the federal sentence was imposed.

[5]    In *Ruggiano,* the United States Court of Appeals for the Third Circuit held that in imposing a sentence, a federal district court may grant an "adjustment" for time served on a pre-existing sentence pursuant to U.S.S.G. § 5G1.3(c). Notably, the application note 3(E) to § 5G1.3 (U.S. Sentencing Guidelines Manual § 5G1.3 cmt. N. 3(E) (2003)) appears to be in conflict with the holding in *Ruggiano.* The note provides that, "subsection (c) does not authorize an adjustment of the sentence for the instant offense for a period of imprisonment already served on an undischarged term of imprisonment." Although credit may be given in extraordinary circumstances for time served on a pre-existing sentence, the credit is properly deemed a downward departure and not an adjustment. Notwithstanding this note, *Ruggiano* remains the controlling precedent. While the Third Circuit has addressed the effect of note 3(E) on the *Ruggiano* holding, and has found that the note abrogated *Ruggiano,* it has not done so in a

"precedential" opinion. *See United States v. Destio,* 153 Fed. Appx. 888, 893–94 (3d Cir.2005).

This Court further observes that application note 3(E) to U.S.S.G. § 5G1.3 became effective on November 1, 2003, after Saunders' federal sentence was imposed.

In *Ruggiano,* the sentencing judge stated "that he thought it appropriate to go ahead and recommend that [Ruggiano's sentence] be served concurrently and that he receive credit for the amount of time that he served there." *Id.,* 307 F.3d at 124. "Then, in his written judgment, [the sentencing judge] recited that Ruggiano's sentence was to 'run concurrent with State sentence. Defendant to receive credit for time served.' " *Id.* The Third Circuit found that this language conveyed an intent of the sentencing judge to grant an adjustment by making the federal sentence retroactively concurrent for the entire period of the state sentence pursuant to § 5G1.3(c).

In this case, the sentencing court expressly made Saunders' federal sentence consecutive to his state sentence, and found that Saunders had been granted a substantial reduction in his federal sentence based on the downward departure from the 5K1.1 motion. The sentencing court further noted that Saunders did not warrant an additional reduction in his sentence. Specifically, in an Order dated October 19, 2006, pursuant to an action in which Saunders sought an interpretation of his sentence imposed on June 18, 2004, the sentencing court stated: "It was the intention of the Court that the sentence imposed on the Defendant be consecutive to his State Court sentence. We note that the Defendant had already been granted a considerable departure from the Sentencing Guidelines." (Farrar Decl. at Exhibit f).

Thus, the sentencing court expressly stated that it did not intend to credit Saunders for time served on his state sentence, which was credited towards his state sentence, for the time he spent in federal custody pursuant to the federal writ. Moreover, the sentencing court was explicit in stating that Saunders received a substantial reduction in his federal sentence under the federal sentencing guidelines and was not entitled to any further downward departure. Accordingly, this Court finds that the BOP did not err in its calculation of Saunders' federal sentence and in its denial of credit for the time he spent in federal custody on a writ *ad prosequendum* from May 12, 2002 to June 30, 2004, because this time period was credited towards petitioner's state sentence, and such would constitute double credit in violation of 18 U.S.C. § 3585(b). Given the express and specific direction from the sentencing court that no further reduction on petitioner's federal sentence was intended, the BOP's decision concerning the calculation of Saunders' sentence and the award of prior custody credit is mandated and limited by 18 U.S.C. § 3585(a) and (b). This habeas petition is denied accordingly.

### CONCLUSION

**\*9** Based on the foregoing, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is hereby denied. An appropriate Order accompanies this Opinion.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 2775763

---

**End of Document**
© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 5971055
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Dysha WRIGHT, Petitioner,
v.
HUDSON, Warden, Respondent.

No. 9:12–cv–01638–JKS.
|
Signed Oct. 14, 2015.

**Attorneys and Law Firms**

Dysha Wright, Pollock, LA, pro se.

Charles E. Roberts, Office of the United States Attorney, Syracuse, NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior District Judge.

**\*1** Dysha Wright, a federal prisoner proceeding *pro se,* filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2241. Wright is in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated at USP Pollock. Respondent has answered, and Wright has replied. Wright does not challenge his conviction, but rather alleges that the BOP improperly denied him credit toward his federal sentence for time spent in state custody. For the reasons discussed below, the Court rejects this claim.

I. BACKGROUND/PRIOR PROCEEDINGS

On March 24, 2007, Wright, who was then on state parole, was arrested by the Philadelphia Police Department and charged in case number CP–51–CR–0004044–2007 with aggravated assault, criminal conspiracy engaging in murder, firearms not to be carried without a license, and intentionally and knowingly failing to relinquish a firearm. Although that case was later dismissed, Wright remained in state custody on pending parole violations in case numbers CP–51–CR–0810791–2004 and CP–51–CR–1005761–2005.

While in state custody, Wright was indicted on federal charges and temporarily transferred to federal custody after the issuance of a writ of habeas corpus ad prosequendum [1] on August 17, 2007. On March 30, 2009, the United States District Court for the Eastern District of Pennsylvania sentenced Wright in case number Cr 07–433–01 to an imprisonment term of 120 months for possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon. [2] Wright was returned to the state of Pennsylvania on April 7, 2009. It thus appears that Wright remained in federal confinement through his federal trial and sentencing.

[1]     A writ of ad prosequendum orders the production of a prisoner in court for the purpose of standing trial. *See* 28 U.S.C. § 2241(c)(5); *United States v. Mauro,* 435 U.S. 340, 357–58 (1978). If a prisoner is serving a state sentence when he is produced for a federal prosecution, the writ temporarily transfers him to federal custody for prosecution but the state retains primary custody for the purpose of calculating his state sentence. *Lugo v. Hudson,* 785 F.3d 852, 854–55 (2d Cir.2015) (citing *United States v. Ferman,* 252 F.3d 102, 108 n. 10 (2d Cir.2001)).

[2]     The Eastern District of Pennsylvania subsequently reduced the term of imprisonment to 114 months.

On October 9, 2009, the Commonwealth of Pennsylvania sentenced Wright in case number MC–51–CR–0026670–2009, which appears to have involved new weapons-related charges, to a term of imprisonment of 6 to 12 months. This term of imprisonment expired on November 7, 2010.

On March 1, 2010, Wright was sentenced on his parole violation in case number CP–51–CR–0810791–2004 to a term of imprisonment of 9 to 18 months. He was awarded credit for time served from March 24, 2007, to March 1, 2010; his sentence thus expired the same day it was issued.

On April 6, 2010, Wright was sentenced on his parole violation in case number CP–51–CR–1005761–2006 to a term of imprisonment of 6 to 12 months to be served consecutively to the term imposed in case number CP–51–CR–0810791–2004. This term of imprisonment also expired on November 7, 2010.

While serving his state sentences, Wright committed additional offenses of aggravated assault, simple assault, and recklessly endangering another person. He was sentenced in case number MC–51–CR–0038219–2010 to a term of imprisonment of 8 to 12 months. This term of imprisonment expired on May 10, 2011. On that date, he was released to the custody of the United States Marshals to begin service of his federal sentence.

**\*2** In August 2011, Wright sought a retroactive *nunc pro tunc* designation requesting that his state institution be designated as his official place of imprisonment for his federal sentence since his return to state custody on April 7, 2009, and that he receive credit for the time he spent in federal imprisonment during his federal prosecution from August 17, 2007, to April 7, 2009. The BOP denied Wright's retroactive designation request as follows on August 4, 2011:

> According to the Designation & Sentence Computation Center (DSCC), you served a state parole violation until 11–07–2010 and remained in custody on assault charges. You received another sentence of 6 to 12 months and paroled off this charge on 05–10–2011. Your federal sentence begins on 05–10–2011.

Wright administratively appealed the denial to the Regional Office. The BOP then sent a letter dated January 31, 2012, to the sentencing judge on the Eastern District of Pennsylvania to obtain the court's position regarding Wright's request. The Court indicated in response that it "d[id] not feel strongly about whether a retroactive designation would be appropriate" but "would probably give [Wright] the benefit of the doubt and do a retroactive designation" if he had served his state sentences without incident. The BOP nonetheless denied Wright's administrative appeal on May 8, 2012:

> As a result of the decision in *Barden v. Keohane,* the Bureau of Prisons (Bureau) considers an inmate's request for prior custody credit for time spent in state custody as a request for a *nunc pro tunc* concurrent designation. In accordance with Program Statement 5160.05, *Designation of State Institution for Federal Sentence,* a designation effecting concurrent service of state and federal sentences is made

only when it is consistent with the goals of the criminal justice system.

We have reviewed your appeal in accordance with the factors provided in 18 U.S.C. § 3621(b). [ 3 ] In your case, we have determined the relevant factors under 18 U.S.C. § 3621(b) are (2), (3), (4) and (5). Under factor (2), your federal offenses are Possession with Intent to Distribute Cocaine, Possession of a Firearm by a Convicted Felon, and Possession of a Firearm in Furtherance of a Drug Trafficking Crime. Under factor (3), you have prior arrests and/ or convictions for Parole Violation, Possession of an Instrument of Crime, Simple Assault, Criminal Trespass, Theft Unlawful Taking, Unauthorized Use of an Auto, Possessing an Instrument of Crime, Simple Assault, Terroristic Threats, Carrying Firearms without a License, and Intentionally Possessing a Controlled Substance. Under factor (4), the Court was silent concerning the relationship of its sentence with any state sentence. Under factor (5), one count of your federal sentence was in violation of 18 U.S.C. § 924(c), which mandates a consecutive term.

3     That section enumerates the following five factors:
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence-
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
> 18 U.S.C. § 3621(b).

Pursuant to 18 U.S.C. § 3584(a) "multiple terms of imprisonment imposed at different times run consecutively unless the Court orders that the terms are to run concurrently." Therefore, the federal Court was contacted for its input concerning its position on a concurrent designation for you. The Court based its recommendation on your disciplinary conduct while serving your previous state sentences, however, your disciplinary record for the

relevant state sentence revealed several incidents of serious misconduct.

> *3 Based on the foregoing, we have determined that a concurrent *nunc pro tunc* designation is not appropriate. Your sentence has been computed in accordance with the applicable statutes, Bureau police, and the sentencing Court's intent.

> Your appeal is denied.

Wright timely filed a Petition for a Writ of Habeas Corpus to this Court on October 31, 2012.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Wright challenges the denial of his *nunc pro tunc* request. According to Wright, he is entitled to credit against his federal sentence since August 17, 2007, the date he was indicted in federal court and transferred from state to federal custody via issuance of a writ of habeas corpus ad prosequendum, and including the period he spent in state custody from April 7, 2009, to May 10, 2011.

## III. STANDARD OF REVIEW

Wright brings the instant Petition pursuant to 28 U.S.C. § 2241. As the Second Circuit has explained:

> Section 2241 ... is the proper means to challenge the execution of a sentence. In a § 2241 petition a prisoner may seek relief from such things as, for example, the administration of his parole, computation of his sentence by parole officials, disciplinary actions taken against him, the type of detention, and prison conditions in the facility where he is incarcerated.

*Adams v. United States,* 372 F.3d 132, 135 (2d Cir.2004); *see also Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001); *Chambers v. United States,* 106 F.3d 472, 474–75 (2d Cir.1997).

Although a prisoner can challenge determination of credit on the federal sentence, "[t]he Attorney General, through the BOP, possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b); the district courts do not have authority to order the BOP to either grant or deny credit or to disregard the BOP's calculations." *United States v. Whaley,* 138 F.3d 205, 206–07 (2d Cir.1998) (citing *United States v. Wilson,* 502 U.S. 329, 333, 335 (1992); *see also United States v. Pineyro,* 112 F.3d 43, 45 (2d Cir.1997) ("After a defendant is sentenced, it falls to BOP, not the district judge to determine when a sentence is deemed to 'commence'; and whether the defendant should be awarded credit for 'good time.' " (citations omitted)). It is well established that the "Bureau of Prisons, and not the courts, determines when a defendant's sentence starts and whether the defendant should receive any credit for any prior time spent in custody." *United States v. Montez–Gaviria,* 163 F.3d 697, 700–01 (2d Cir.1998); *see also* 18 U.S.C. § 3585(a). Thus, with respect to a § 2241 petition challenging the computation of credit on a federal sentence, a district court has the power only to review a decision by the BOP, not to make credit determinations in the first instance.

*Nunc pro tunc* designation is a retroactive designation that the BOP may grant in accordance with the discretion it is given under 18 U.S.C. § 3621(b) to designate the place of a federal prisoner's confinement. That provision allows the BOP to designate a place of imprisonment "maintained by the Federal Government or otherwise." 18 U.S.C. § 3621(b). In the event the BOP denies a nunc pro tunc designation, "any further court review of the Bureau's action will be limited to abuse of discretion." *Barden v. Keohane,* 921 F.2d 476, 478 (3d Cir.1990). "[S]uch a designation by the BOP is plainly and unmistakenly within the BOP's discretion and [the court] cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy." *Taylor v. Sawyer,* 284 F.3d 1143, 1149 (9th Cir.2002) (citing *McCarthy v. Doe,* 146 F.3d 118, 123 (2d Cir.1988); *Barden,* 921 F.2d at 478).

## IV. DISCUSSION

*4 Wright's first argument is addressed to the BOP's calculation of his sentence. Wright asserts that it is "crystal clear" that he should be given credit against his federal sentence from at least August 17, 2007, the date he was transferred to federal custody pursuant to a federal writ of habeas corpus ad prosequendum, to April 7, 2009, the date he

was returned to state custody after federal sentencing. Wright contends that this is particularly true given that he was in federal custody and had not, as of that time, been sentenced in state court.

But Wright does not allege that the writ ad prosequendum was invalid. Wright was thus transferred to federal custody pursuant to a valid writ ad prosequendum, which operates to allow a governmental entity "borrow" a prisoner from his primary custodian. *Lugo,* 785 F.3d at 855 (citing *Thomas v. Whalen,* 962 F.2d 358, 360–61 & n. 3 (4th Cir.1992)). The record is clear that the Commonwealth of Pennsylvania treated Wright as remaining within state custody during his federal prosecution and credited that period of time towards his state sentence. *See id.* (citing *United States v. Fermin,* 252 F.3d 102, 108 n. 10 (2d Cir.2001) ("a defendant held at a federal detention facility is not 'in custody' for the purposes of [commencement of a federal sentence] when he is produced through a writ of habeas corpus ad prosequendum")). When Wright was released from state custody on May 10, 2011, and delivered to federal officials, he began serving his federal sentence. The BOP thus did not incorrectly calculate his sentence with respect to the period he was under federal prosecution. *Id.* at 855–56 (citing *United States v. Labeille–Soto,* 163 F.3d 93, 99 (2d Cir.1998) (a "defendant has not right to credit on his federal sentence for time that has been credited against his prior state sentence")); *see also Tisdale v. Menifee,* 166 F.Supp.2d 789, 791–92 (S.D.N.Y.2001) (even if petitioner was in federal custody when a federal detainer was lodged against him, his claim for credit must be dismissed because he received state credit for the time served under the federal detainer).

Wright further alleges that the BOP erred in denying his *nunc pro tunc* designation request. Under 18 U.S.C. § 3621(b), the BOP has the authority to designate a non-federal facility as a place of federal confinement. *Abdul Malik v. Hawk Sawyer,* 403 F.3d 72, 73 (2d Cir.2005). The practical effect in such a case is that the federal and state sentences would run concurrently. *Id.* (citing *McCarthy,* 146 F.3d at 122–23); *see also Barden,* 921 F.2d at 480 (state incarceration may be credited to federal sentence if the BOP *nunc pro tunc* designates state facility as the facility where petitioner served part of his federal sentence). The BOP is under no obligation to grant a *nunc pro tunc* designation, but the BOP must give full and fair consideration to the language of the federal and state judgments, the state sentencing records, and any other pertinent information relating to the federal and state sentences in accordance with the factors enumerated

in 18 U.S.C. § 3621(b), as noted in note 3, *supra.* [4] BOP Program Policy Statement 5160.05(9)(b)(4)(b) (governing inmate requests for *nunc pro tunc* designations) (Docket No. 14–6 at 5–8).

[4]  The BOP does not have authority to decide whether a sentence should run concurrently or consecutively to other sentences where the statutory presumptions of 18 U.S.C. § 3584(a) are applicable. *McCarthy,* 146 F.3d at 122. Section 3584(a) presumes that "terms of imprisonment imposed at different times run consecutively ." That presumption, however, only applies "where a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment." § 3584(a). The presumption of § 3584(a) is inapplicable where, as here, a federal court imposes a sentence on a defendant who is not already subject to a state sentence. *McCarthy,* 146 F.3d at 121–22; *see also Abdul Malik,* 403 F.3d at 75. Thus, the presumption of § 3584(a) does not apply to Wright's state prison term, and the BOP was required to provide full and fair consideration of Wright's *nunc pro tunc* request.

**\*5** The record here shows that the BOP considered the § 3621(b) factors, as required by *Barden.* Specifically, in its administrative appeal denial, the BOP gave a brief explanation of why the *nunc pro tunc* designation was inappropriate to each of the factors it deemed relevant. [5] With regard to the second factor, the BOP listed Wright's federal offenses. While that cursory treatment might give the Court pause that the BOP did not take into account "the nature and circumstances of the offense[s]" as required, it appears that the BOP was indicating that the federal offenses were quite serious and unrelated to the parole violations and assault convictions under which Wright was in state custody. Under the third factor, "the history and characteristics of the prison, the BOP provided a list of Wright's prior arrests and/or convictions. Under the fourth factor, the BOP noted that the federal sentencing court "was silent concerning the relationship of its sentence with any state sentence." The BOP further found that the fifth factor, "any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28," weighed against Wright's request as one count of his federal sentence was in violation of 18 U.S.C. § 924(c), which mandates a consecutive term. Finally, the BOP noted that it had contacted the federal sentencing court for its position on a concurrent designation,

and that court had based its recommendation on Wright's disciplinary conduct while in jail, which the BOP indicated "revealed several incidents of serious misconduct." Thus, because the BOP took into account all five factors under § 3621(b), it provided full and fair consideration to Wright's *nunc pro tunc* request. Accordingly, the BOP did not abuse its discretion in denying Wright's request.

> 5    The BOP indicated that it found the first factor, "the resources of the facility contemplated," not applicable to Wright's case.

Wright nonetheless argues that concurrent designation is appropriate because the state court sentencing judge indicated that his state imprisonment term should run concurrently with the already-imposed federal term. According to Wright, "The state judge had the authority to impose his sentence consecutive to the federal sentence that was already imposed, but given all the facts chose not to do so." There does not appear to be evidence in the record that the state court believed Wright's state sentence would run concurrent to his federal sentence. But even assuming that Wright's assertion is true, that fact does not warrant relief because the state court's determination is not binding on federal authorities. *Abdul– Malik,* 403 F.3d at 75; *Barden,* 921 F.2d at 478 n. 4. In *Johnson v. Langford,* the petitioner appealed the BOP's denial of his *nunc pro tunc* request, arguing that the state court indicated that the state and federal sentences would run concurrently. No. 9:15–cv–0048, 2014 WL 582097, at \*5 (N.D.N.Y. Oct. 5, 2015). The court rejected that argument, noting that, "[w]hile it [wa]s quite clear from the sentencing transcript that the state court judge believed that the state and federal sentences would run concurrently, the intent of the state court judge cannot change federal law." *Id.*

**\*6** The record here indicates that the period of Wright's federal prosecution was properly credited against Wright's state sentence, and the BOP gave full and fair consideration to Wright's *nunc pro tunc* request in accordance with the BOP Program Policy Statement and 18 U.S.C. § 3621(b). Accordingly, the BOP did not err in calculating Wright's federal sentence and did not abuse its authority in denying Wright a *nunc pro tunc* designation.

## V. CONCLUSION

Wright is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED** THAT the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED.**

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " (quoting *Miller–El v. Cockrell,* 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003))). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

## All Citations

Not Reported in F.Supp.3d, 2015 WL 5971055

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.